2010 UT App 249

Teresa GUSS, Plaintiff and Appellee,

v.

CHERYL, INC.; and Derek Edvalson, Defendant and Appellant.

No. 20090592–CA.

Court of Appeals of Utah.

Sept. 10, 2010.

J. Angus Edwards and Jessica P. Wilde, Salt Lake City, for Appellant.

William R. Rawlings and Travis B. Alkire, Draper, for Appellee.

Before Judges THORNE, VOROS, and ROTH.

## OPINION

ROTH, Judge:

¶1 In this personal injury case, Cheryl, Inc. appeals the trial court's denial of its "Motion for Revision of the Decision Denying Summary Judgment."[1] In essence, the motion requested that the trial court enter judgment in accordance with the jury's finding that Derek Edvalson, the son of the company's owner (Son), was not an employee of Cheryl, Inc.—an issue of material fact identified in the trial court's ruling denying Cheryl, Inc.'s earlier motion for summary judgment. To give effect to that finding, Cheryl, Inc. contends that the trial court could not hold it vicariously liable for Son's negligence and that it could not be held independently negligent because such a claim was neither pleaded nor tried. In the alternative, Cheryl, Inc. asserts that the final judgment is wrongly based on an inconsistent verdict and

disregards the jury's determination that Son was not an employee. We affirm.

## BACKGROUND[2]

¶2 Cheryl Edvalson (Edvalson) is the owner of Cheryl, Inc., a closely-held corporation through which she operates a skin care salon. On March 12, 2004, when this cause of action arose, Cheryl, Inc. was located in the home where Edvalson resided with her husband and Son, who was then a twenty-one-year-old college student. Customer access to the salon was through the home's front door, which is at the top of a short stairway.

¶3 From March 2001 until March 12, 2004, Teresa Guss came to Edvalson's home on a regular basis to receive facial treatments from Cheryl, Inc. Because Guss has paraplegia as a result of an earlier accident and is confined to a wheelchair, she needed assistance accessing the salon. Initially, Guss's friend carried her into and out of the salon, but over time, Cheryl, Inc. took on this responsibility. Either two of Cheryl, Inc.'s employees or Son would carry Guss from her car, up the stairs, and into the salon before her appointment and would then return her to her vehicle after the appointment concluded.[3]

¶4 On March 12, 2004, Edvalson installed a movable ramp "especially for [Guss]" over the front entry stairs so that Guss could access the salon in her wheelchair.[4] That same day, Guss had an appointment for a facial treatment. After the appointment, Guss asked for assistance in returning to her vehicle. She testified that she needed this

---

1. Cheryl, Inc. treats the motion as a request under rule 54(b) of the Utah Rules of Civil Procedure for reconsideration of the trial court's denial of its motion for summary judgment. Our resolution of the issues presented on appeal does not require that we directly reach the issue of whether the court should have reconsidered its summary judgment ruling or whether a motion for reconsideration under rule 54(b) is an appropriate procedural mechanism for raising such an issue under these circumstances.

2. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *Neely v. Bennett,*

2002 UT App 189, ¶2, 51 P.3d 724 (internal quotation marks omitted).

3. Edvalson and her employees carried Guss on six to twelve occasions. Edvalson asked Son to carry Guss when he was available because it took two of her female employees to carry Guss while Son could carry her by himself. Son carried Guss into the salon two or three times and back to her vehicle once.

4. The ramp was constructed, at Edvalson's request, by her sixteen-year-old nephew, whose sole experience in building ramps was in connection with skateboarding.

assistance because the ramp was too steep for her to venture down unassisted.

¶ 5 Although two other Cheryl, Inc. employees were working that day, Edvalson asked Son to assist Guss to her vehicle, which was parked, facing the house, in the driveway. Due to the installation of the ramp, Son could push Guss in her wheelchair rather than carrying her as the previous practice had been. In accordance with Guss's instructions, Son pushed her wheelchair down the ramp, across the front yard, and onto the driveway near the rear of Guss's car. Edvalson opened the car's driver-side door, and Son pushed Guss's wheelchair up the driveway until she was near the driver's seat. Guss testified that because she was not parallel with the driver's seat, she asked Son to "please push [her] forward." Son testified that Guss had said, "[U]p, up, up." In any event, Son testified that he lifted the rear wheels of the wheelchair so that Guss could slide into the seat of her car.[5] Instead, she fell forward out of the chair, hitting her shins and knees on the driveway. As a result of the fall, Guss suffered serious back and leg injuries, which eventually required her to have surgery and significantly altered her lifestyle.

■ ¶ 6 In March 2006, Guss sued Cheryl, Inc. and Son for negligence. The parties agree that Guss's complaint made a respondeat superior claim, alleging that Son was Cheryl, Inc.'s employee. Under that doctrine, an employer is vicariously liable for the negligent torts committed by its employees during the course of employment. *See Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991). A central dispute in this appeal is whether Guss also made and tried a separate claim of negligence against Cheryl, Inc., independent of Son's employment status.

¶ 7 In March 2007, Cheryl, Inc. moved for summary judgment, arguing that Son was not an employee of the company and that it had not been independently negligent. Guss opposed summary judgment, claiming that Son's employment status and Cheryl, Inc.'s independent negligence in delegating its duty to Son were disputed questions of fact. In its reply, Cheryl, Inc. responded only to Guss's contention that there was a dispute over Son's status as an employee. Its arguments at the motion hearing were similarly focused. The trial court denied the motion from the bench, stating that there was "a fact[ ] question for the jury to determine whether or not . . . [S]on is a volunteer helping [Edvalson] in her business, and therefore the business should be liable or could be liable." Guss did not submit a written order denying Cheryl, Inc.'s motion, and no written order was ever entered. The trial court's ruling therefore is memorialized only in the hearing transcript and a brief, unsigned minute entry that does not elaborate on the basis for the decision.

¶ 8 On March 5, 2009, four days before trial, Son settled with Guss. The case then proceeded against Cheryl, Inc. alone. During the course of the trial, Cheryl, Inc. submitted proposed jury instructions and special verdict forms from which the final claim-specific instructions and special verdict questions were drawn. The final instructions defined negligence and fault and instructed the jury on a business owner's duty to its customers but did not include any instruction describing vicarious liability under the doctrine of respondeat superior or defining "employee" or "volunteer." The special verdict form consisted of seven interrogatories, asking the jury to, among other things, determine whether Cheryl, Inc. was negligent and, if so, whether its negligence was a proximate cause of Guss's injuries; allocate fault between Guss, Son, and Cheryl, Inc.; and decide if Son was an employee or volunteer of Cheryl, Inc. The special verdict form did not instruct the jury to refrain from addressing the remaining questions if it found Son to be a volunteer. Both Cheryl, Inc. and Guss approved the jury instructions and the special verdict form. The jury found that Guss, Son, and Cheryl, Inc. were all negligent, that the negligence of each proximately caused

---

5. The Edvalsons' driveway has a slight incline, running downhill from the house to the street. Because Guss's car was parked facing the house and Son pushed Guss forward from the rear of her vehicle to the driver's seat, Son interpreted Guss's instruction to mean that she needed the wheelchair to be level with the seat before she could transfer herself into the vehicle.

Guss's injuries, and that Son was a volunteer, rather than an employee of Cheryl, Inc. The jury allocated fault as follows: Guss, 38%; Son, 20%; Cheryl, Inc., 42%.

¶ 9 On March 16, 2009, after trial but before a final judgment was entered, Cheryl, Inc. filed the motion that led to this appeal (the March 16 motion). In that motion, Cheryl, Inc. argued that, based on its interpretation of the trial court's summary judgment ruling and its reading of the complaint, the only real issue before the jury was whether Son was an employee of Cheryl, Inc. and, given that the issue was resolved against Guss, the court must enter judgment in the corporation's favor. The trial court denied the March 16 motion, stating that "[t]he [j]ury may have inferred from the evidence and a review of the [special v]erdict form that liability could be assessed against CHE-RYL, INC. independent of the status of [Son]." The court then entered judgment for Guss in the amount of $188,813.49, the equivalent of 42% of the total damages, plus interest and costs. Cheryl, Inc. now appeals. We affirm the decision of the trial court.

## ISSUES AND STANDARDS OF REVIEW

■■ ¶ 10 Although Cheryl, Inc. has stated and organized its issues for appeal differently in its brief, we interpret the company's briefing to make essentially two contentions for our review. First, Cheryl, Inc. asserts that after the trial court's summary judgment ruling, the sole issue left for trial was resolution of the factual issue of whether Son was an employee and that the jury could not properly have found Cheryl, Inc. independently liable for Guss's injuries because such a claim was neither pleaded nor tried. In its ruling on the March 16 motion, the trial court implicitly ruled that Guss had made and tried such a claim. The "claim that [a] trial court erred in entering judgment against [a party] on a theory not raised by the pleadings involves a conclusion of law that we review under a correction-of-error standard." *Cowley v. Porter*, 2005 UT App 518, ¶ 31, 127 P.3d 1224. "If[, however,] an issue is fully tried, a court may . . . deem the pleadings amended even if the issue was not originally pleaded." *Shinkoskey v. Shinkoskey*, 2001

UT App 44, ¶ 6 n. 2, 19 P.3d 1005. We will affirm a trial court's determination that an issue was fully tried if it is apparent from the record that the opposing party had notice of the claim and "a fair opportunity to defend." *Id.*

■ ¶ 11 Cheryl, Inc. also claims that reversal of the judgment or a new trial is warranted because the judgment fails to give effect to the jury's finding that Son was not an employee of the company. "[I]n [the] case of a special verdict, the jury only finds the facts, and the court applies the law thereto and renders the verdict." *Dishinger v. Potter*, 2001 UT App 209, ¶ 17, 47 P.3d 76 (second alteration in original) (internal quotation marks omitted). This means that when the verdict establishes the basis for a claim as a matter of law, a court must enter judgment in accordance with that verdict. *See id.* ¶ 34; *accord First Sec. Bank v. Ezra C. Lundahl, Inc.*, 22 Utah 2d 433, 454 P.2d 886, 889 (1969) (requiring a trial court to accept the jury's factual findings). *See generally* Utah R. Civ. P. 58A(a) (requiring a court to enter an appropriate judgment based upon the jury's answers to the special verdict).

## ANALYSIS

I. The Issue of Cheryl, Inc.'s Independent Negligence Was Tried by Consent.

■ ¶ 12 To support its argument that the judgment could not be entered against it for its own negligence, independent of Son's status, Cheryl, Inc. correctly points out that a judgment "should fit within the framework of the [complaint] as originally drawn, or as amended." *Lee v. Sanders*, 2002 UT App 281, ¶ 7, 55 P.3d 1127 (internal quotation marks omitted).

¶ 13 Guss's complaint is notably vague regarding a separate negligence claim against Cheryl, Inc., even given our liberal notice pleadings requirements. *See generally* Utah R. Civ. P. 8(a) (requiring a complaint to contain only a "short plain statement of the claim showing that the pleader is entitled to relief"). Despite the complaint's deficiencies, the issue of separate negligence was at least alluded to in the complaint and raised, albeit briefly, in the motion for summary judgment,

in Guss's response to that motion, and at the motion hearing. In its March 16 motion and on appeal, Cheryl, Inc. contends that the trial court limited the trial to the respondeat superior claim when it denied summary judgment by saying, "[T]his is a fact[ ] question for the jury to determine whether or not ... [S]on is a volunteer helping [Edvalson] in her business, and therefore the business should be liable or could be liable." The court's ruling is broad enough, however, that it can be read to conclude that there is an issue as to whether Son was an employee or volunteer and also to raise generally the issue of whether Cheryl, Inc. could be liable even if the jury found Son to be a volunteer. It is implicit in the ruling on the March 16 motion that the trial court itself did not interpret its summary judgment ruling as narrowly as Cheryl, Inc. does.

■ However vague Guss's independent negligence theory may have been during the pleadings and pretrial stages of the case, the record shows that Cheryl, Inc. actively participated in a trial that focused in a significant way on the issue of whether the company was liable for Guss's injuries based on its own negligence. By doing so without objection, Cheryl, Inc. effectively consented to trial of an independent negligence claim, in addition to the vicarious liability claim, and effectively waived any contention that the independent negligence claim had not been adequately raised before trial. *See generally* Utah R. Civ. P. 15(b) ("When issues not raised by the pleading are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

¶ 15 For example, in its opening statement, Cheryl, Inc. made remarks regarding fault allocation and the company's use of reasonable care in assisting Guss. During closing argument, Guss's attorney said, "I frankly think that the person most responsible for this accident ... [is] Edvalson and [Cheryl, Inc.] .... [b]ecause [Edvalson] owns [the]

business." Rather than objecting to those statements as addressing an issue not before the jury, Cheryl, Inc. simply attempted to dilute its own responsibility by urging the jury to allocate fault and any resulting damages among all the players, including Cheryl, Inc.: "If you believe [Cheryl, Inc. and Son] were negligent, ... are you going to blame both of them? Yeah, unfortunately, I think you have to." The company then urged the jury to divide any resulting damages three ways, among Guss, Son, and Cheryl, Inc.

¶ 16 Moreover, Cheryl, Inc. approved without objection a set of jury instructions that omitted any reference to an employment relationship between the company and Son but rather instructed the jury on the concept of fault and the duty of business owners, such as Cheryl, Inc., to their customers. Cheryl, Inc. also submitted proposed special verdict forms, from which the trial court drew all seven of the final questions to be considered by the jury. The trial court entered its final judgment based on the jury's responses to those interrogatories. Interrogatory 1 asked the jury to decide if Cheryl, Inc. was negligent, and Interrogatory 2 asked the jury to determine whether Cheryl, Inc.'s negligence was the proximate cause of Guss's injuries. Interrogatories 3 and 4 asked the same questions with respect to Son. Interrogatory 5 asked the jury to allocate fault among Cheryl, Inc., Son, and Guss, but only if it answered "yes" to Interrogatories 2 and 4—the interrogatories dealing with the causal link between Cheryl, Inc.'s and Son's negligence and Guss's injuries.[6] Interrogatory 7 asked the jury to determine Guss's total damages.[7]

¶ 17 Cheryl, Inc.'s opening and closing statements and the jury interrogatories demonstrate that the case involved a separate claim of negligence against the company. Only such a claim would require the jury to determine the company's negligence. The employer's own negligence is irrelevant to a vicarious liability claim because under the

---

6. Although Interrogatory 5 allowed the jury to include Guss in its allocation of fault, there were no interrogatories specifically asking the jury to consider whether Guss herself was negligent and, if so, whether her negligence was a proximate cause of her own injuries.

7. Only Interrogatory 6 addressed the respondeat superior claim, asking the jury to determine whether Son was an employee or a volunteer.

doctrine of respondeat superior, responsibility for the negligent action of an employee is simply passed through to the employer. Further, allocation of fault between the employer and employee is unnecessary because the employer becomes entirely responsible financially for the employee's negligence. *See generally Clover v. Snowbird Ski Resort*, 808 P.2d 1037, 1040 (Utah 1991) ("Under the doctrine of respondeat superior, employers are held vicariously liable for the torts their employees commit when the employees are acting within the scope of their employment.").

¶ 18 Cheryl, Inc.'s conduct prior to and during trial therefore indicates that it had notice of a separate claim of negligence asserted against it and that it actively defended against that claim despite any vagueness in the pleadings. Certainly, it is apparent from the record that Cheryl, Inc. "had a fair opportunity to defend" against such a claim during the trial and undertook to do so. *See Shinkoskey v. Shinkoskey*, 2001 UT App 44, ¶ 6 n. 2, 19 P.3d 1005. We can discern no indication of surprise here that can be said to have prejudiced the company. *See Cowley v. Porter*, 2005 UT App 518, ¶¶ 38–39, 127 P.3d 1224 (determining no prejudice resulted from the plaintiff's failure to amend the pleadings to include a breach of contract claim where the defendant's pretrial and trial conduct indicated that it was aware of the additional claim and the defendant had ample opportunity to defend against that claim).

¶ 19 This court has stated that "[i]mplied consent to try an issue may be found where one party raises an issue material to the other party's case or where evidence is introduced without objection, [and] where it appear[s] that the parties understood the evidence [was] to be aimed at the unpleaded issue." *Lee v. Sanders*, 2002 UT App 281, ¶ 7, 55 P.3d 1127 (second, third, and fourth alterations in original) (internal quotation marks omitted). We conclude that the issue

of Cheryl, Inc.'s independent negligence was properly tried by its consent.

## II.   The Judgment Correctly Gives Effect to the Jury's Findings in the Special Verdict.

■ ¶ 20 Cheryl, Inc. also challenges the judgment as inconsistent with the verdict. This contention has two aspects: first, that the judgment is based on a verdict that is facially inconsistent because it asks the jury to determine whether the company is both vicariously liable and independently liable and second, that by entering judgment against it for its independent negligence, the trial court failed to give effect to the jury's conclusion that Son was a volunteer and not an employee.

¶ 21 The crux of Cheryl, Inc.'s argument is that the trial court disregarded the special verdict's Interrogatory 6, in which the jury determined that Son was a volunteer and not an employee when it awarded Guss 42% of the total damages, the share of fault apportioned to Cheryl, Inc. by the jury. Cheryl, Inc. claims that the "volunteer" finding created an inconsistency in the verdict that precluded the jury from holding Cheryl, Inc. liable for Guss's injuries and the court from entering a judgment against Cheryl, Inc. for any amount.[8] *See generally Rasmussen v. Sharapata*, 895 P.2d 391, 396 (Utah Ct.App. 1995) (requiring an appellate court to attempt to reconcile seemingly inconsistent special verdict interrogatories before reversing a judgment or ordering a new trial). A verdict that finds an entity independently liable and not vicariously liable is neither inconsistent on its face nor uncommon. *See, e.g., Birkner v. Salt Lake Cnty.*, 771 P.2d 1053, 1059 (Utah 1989) (affirming the entry of judgment against the employer for negligent supervision despite concluding that the company was not vicariously liable for the employee's sexual battery). *See generally J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992) ("Regardless of whether an em-

---

8.   Cheryl, Inc. apparently bases this conclusion on its reading of *Glover v. Boy Scouts of Am.*, 923 P.2d 1383 (Utah 1996), to mean that an entity cannot be vicariously liable for the negligence of a volunteer. *Glover* did not include a claim of independent negligence against the corporate de-

fendants, however. *See id.* at 1385. Moreover, because the parties agreed that Cheryl, Inc. would not be vicariously liable if the jury found Son to be a volunteer and no award was made on the basis of vicarious liability, *Glover* is inapplicable to our decision.

ployer may be held liable under the doctrine of respondeat superior, an employer may be directly liable for its acts or omissions...."").

¶ 22 Lastly, the final judgment appropriately took into account the jury's determination that Son was a volunteer. The judgment was consistent with the jury's finding that Son was not an employee of Cheryl, Inc. because in it the trial court acknowledged and gave effect to that finding by declining to pass Son's 20% allocation of liability on to Cheryl, Inc. under the doctrine of respondeat superior. Rather, the court entered judgment against the company for an amount—42% of the total damages—limited to the share of fault allocated to Cheryl, Inc. by the jury.

¶ 23 We therefore conclude that there was no inconsistency in the verdict and that the trial court appropriately implemented the jury's verdict into the judgment.

## CONCLUSION

¶ 24 The trial court properly concluded that the independent negligence claim was tried by consent. Judgment against Cheryl, Inc. for its own negligence was not inconsistent with the jury's determination that Son was not an employee and was appropriate given the jury's allocation of 42% of the fault to Cheryl, Inc. The final judgment is consistent with the special verdict because it only assesses liability against Cheryl, Inc. for its own negligence and does not pass Son's liability on to the company. We therefore affirm the judgment and find no basis for granting Cheryl, Inc.'s motion for new trial.

¶ 25 WE CONCUR: WILLIAM A. THORNE JR. and J. FREDERIC VOROS JR., Judges.