*This opinion is subject to revision before final publication in the Pacific Reporter*

**2019 UT 10**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ROBERT PILOT,
*Petitioner*

*v.*

EARL N. HILL,
*Respondent*

No. 20180523
Filed March 1, 2019

On Certiorari to the Utah Court of Appeals

Third District, Summit County
The Honorable Kara Pettit
No. 140500187

Attorneys:

Karra J. Porter, Kristen C. Kiburtz, Salt Lake City, Edward T. Wells, Murray, for petitioner

Kristin A. VanOrman, Jessica J. Johnston, S. Spencer Brown, Salt Lake City, for respondent

JUSTICE HIMONAS authored the opinion of the Court in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 "Speak what you think now in hard words, and to-morrow speak what to-morrow thinks in hard words again, though it contradict every thing you said to-day." Ralph Waldo Emerson, *Self-Reliance*, ESSAYS: FIRST SERIES (1841), https://emersoncentral.com/texts/essays-first-series/self-reliance/ (last visited Feb. 15, 2019). Embracing this contrary spirit, the petitioner in this case, Robert Pilot, applies this attitude to the Utah Rules of Civil Procedure. In 2011, these rules were amended in large

part to facilitate access to justice and promote proportionality in costs and procedures in civil litigation. The three-tier structure established by Utah Rule of Civil Procedure 26 requires plaintiffs to plead one of three tiers based on expected damages. In turn, this tier designation commensurably restrains discovery schedules, document production, and general costs associated with civil litigation. Because Pilot pled a Tier 2 case—which involves, among other things, a limit on recoverable damages—and never amended his pleading before trial, he now asks this court to allow a post-trial amendment of his tier designation so that he can receive more damages. The district court and court of appeals both rejected Pilot's motion for post-trial amendment of his tier designation. Because the facts of this case, the relevant law, and the rules of the tier structure—rules Pilot understood and followed before pragmatism forced an alternative understanding after trial—all dispositively oppose Pilot's preferred outcome, we affirm.

## BACKGROUND

¶2 In 2011, Utah adopted several amendments to its rules of civil procedure with the intention of addressing the ever-increasing cost of litigation and its effect on litigants. High discovery costs and the expenses of a lengthy trial exert a ripple effect that can dissuade potential litigants from even bringing their cases. The prohibitive resources needed to try a case function as a limitation on access to justice for plaintiffs and defendants alike. In response to this problem, the Utah Supreme Court's Advisory Committee on the Rules of Civil Procedure recommended sweeping changes to the rules, which were put into place via the 2011 amendments.

¶3 Utah Rule of Civil Procedure 26(c) separates cases into three tiers.[1] These tiers are delineated by the amount of damages claimed by the plaintiff. Each tier provides proportional caps on the allowed amount of deposition hours, interrogatories, requests for document production and admission, and days allotted to complete standard

---

[1] "Actions claiming $50,000 or less in damages are permitted standard discovery as described for Tier 1. Actions claiming more than $50,000 and less than $300,000 in damages are permitted standard discovery as described for Tier 2. Actions claiming $300,000 or more in damages are permitted standard discovery as described for Tier 3. Absent an accompanying damage claim for more than $300,000, actions claiming non-monetary relief are permitted standard discovery as described for Tier 2." UTAH R. CIV. P. 26(c)(3).

fact discovery. A Tier 1 case seeks damages not to exceed $50,000 and each party is limited to three hours of deposition, five requests for production, and five requests for admission. UTAH R. CIV. P. 26(c)(5). By contrast, a Tier 3 case seeks damages of $300,000 or more and allows 30 hours of deposition, 20 interrogatories, 20 requests for production, and 20 requests for admission. *Id.* Under rule 8, "[a] pleading that qualifies for tier 1 or tier 2 discovery constitutes a waiver of any right to recover damages above the tier limits specified in Rule 26(c)(3), unless the pleading is amended under Rule 15." *Id.* 8(a). In turn, rule 15 provides the framework for the amendment of pleadings before, during, and after trial. This appeal pertains exclusively to Pilot's attempt to amend his tier designation under rule 15(b)(1) on the theory that Earl N. Hill impliedly consented to such an amendment.

¶4 The original action here involved a civil suit by Pilot against Hill for recovery of damages relating to an automobile accident. Pilot pled a Tier 2 case indicating a range of damages more than $50,000 but less than $300,000. There is no evidence presented to show or reason to believe that both parties did not adhere to the corresponding Tier 2 rules of discovery, deposition, production, and admission commensurate with the Tier 2 designation before trial.

¶5 During discovery and at trial, Pilot presented evidence that he had suffered damages well over and above the $300,000 damage limit imposed by the Tier 2 designation. This prompted the district court to ask the attorneys at a pre-trial conference how to reconcile the claimed damages in excess of $300,000 with Tier 2's recovery cap of $300,000. The district court asked both parties "if [the jury] come[s] up with a verdict of $300,000 or more, it gets reduced?" Hill's counsel responded, "Right." And Pilot's counsel said, "Yeah. And then we deal with that after trial," which, at a minimum, seemingly confirmed the district court's and opposing counsel's understanding.

¶6 At trial, Pilot put on evidence suggesting that he had suffered more than $300,000 in damages. Pilot's expert economist testified that Pilot's lost earning capacity was between $625,000 and $634,000. Additionally, Pilot presented lengthy testimony and evidence regarding severe noneconomic damages resulting from his pain and suffering. Hill in turn presented two of his own expert witnesses to testify against the figures presented by Pilot and to attest to Pilot's ability to return to work. Additionally, Hill's attorney contested Pilot's claims for damages by vigorously cross-examining Pilot's witnesses. The jury awarded Pilot $19,484 in economic damages and $621,505 in noneconomic damages for a total of $640,989 in damages.

¶7 After trial and after the jury verdict, Pilot filed a motion to amend his pleadings under Utah Rule of Civil Procedure 15(b).[2] He contended that the issue of damages exceeding those capped by the Tier 2 structure was tried by implied consent of both parties under rule 15(b)(1) and that, regardless of consent, the pleadings should be amended under 15(b)(2). The district court found that the undisputed facts did not constitute implied consent for the purposes of rule 15(b)(1) and that rule 15(b)(2) did not apply. The district court reduced Pilot's judgment to $299,999.99, commensurate with the limits of his Tier 2 designation. Pilot appealed, arguing that under rule 15(b)(1) he was entitled to amend his tier designation post-trial. The court of appeals affirmed the district court, stating that rule 15(b)(1) only applies to unpleaded issues, and that the issue of which tier this case falls into was pled when Pilot designated this as a Tier 2 case. Pilot appeals. We affirm the court of appeals.

¶8 We exercise certiorari jurisdiction under Utah Code section 78A-3-102(3)(a).

## STANDARD OF REVIEW

¶9 When exercising certiorari jurisdiction, "we review the decision of the court of appeals, not that of the district court." *Judge v. Saltz Plastic Surgery, P.C.*, 2016 UT 7, ¶ 11, 367 P.3d 1006 (citation omitted) (internal quotation marks omitted). In the process, we consider whether the court of appeals applied the correct standard. In this respect, the trial court's interpretation of rule 15(b) should be reviewed for correctness, but, "because the trial court's determination of whether the issues were tried with all parties' 'implied consent' is highly fact intensive, we grant the trial court a

---

[2] Rule 15(b) states in part:

> (b)(1) When an issue not raised in the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.
>
> (b)(2) If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended.

fairly broad measure of discretion in making that determination under a given set of facts." *Keller v. Southwood N. Med. Pavilion, Inc.*, 959 P.2d 102, 105 (Utah 1998). Thus, in the context of this action, we review whether Pilot can amend his tier designation under rule 15(b) post-trial, *infra* ¶¶ 12–15, a pure question of law, for correctness. On the other hand, the question of whether Hill impliedly consented to an unpleaded tier 3 case, *infra* ¶¶ 16–23, is a fact-intensive mixed question of law and fact entitling the trial court's decision to broad deference.

## ANALYSIS

¶10  Pilot, after first following the orderly structure prescribed by rule 26 of the Utah Rules of Civil Procedure, now seeks to use rule 15(b)(1) to circumvent the tier structure established by rule 26. After filing a Tier 2 case, and binding both parties to the corresponding rules of trial strategy, cost, and discovery mandated by rule 26, Pilot seeks to ignore the damage limitation also mandated by the tier structure. He asks this court to hobble Hill with a limited Tier 2 defense, while also imposing the maximum stakes of a Tier 3 outcome. Rule 15(b) does no such thing.[3]

¶11  Additionally, the facts of this case clearly show that, even if Pilot's creative understanding of the language of 15(b)(1) and "implied consent" permitted such a modification of the tier structure at trial, there was no such consent here. Both parties adhered faithfully to the Tier 2 designation, the trial court and court of appeals diligently applied the standards agreed upon by the parties,

---

[3] Although we attach no decisional weight to advisory committee notes, the commentary to rule 8 seems to anticipate this case: "It would be unfair for a party to plead a smaller amount of damages in order to take advantage of the streamlined discovery and then seek to recover greater damages. Thus, Rule 8 provides that a party waives its right to recover damages in excess of the maximums provided for that tier unless the pleading is amended." UTAH R. CIV. P. 8, advisory committee notes.

and we in turn shall maintain the integrity of the tier system and its mandates. We affirm the court of appeals.

## I.   PILOT CANNOT MODIFY HIS TIER DESIGNATION POST-TRIAL UNDER RULE 15

¶12 Rule 8(a) of the Utah Rules of Civil Procedure requires claimants to plead that their "damages are such as to qualify for a specified tier defined by Rule 26(c)(3)." Once a claim is designated as Tier 1, 2, or 3, the guidelines and limitations imposed by rule 26(c)(5) dictate how the case will be litigated by both parties to the action.[4] As stated before, this is meant to streamline the process and enables both parties to understand the stakes of the action so that they may plan their litigation strategies and cost outlays accordingly. Additionally, this system functions to allow less valuable claims, as well as defenses—which may otherwise be bludgeoned away from the courts by prohibitive litigation costs—to be asserted. The structure is designed to match the potential outcomes of a case with a temporally and financially proportional litigation process. Rule 8(a) also allows parties to amend their tier designation under rule 15.[5]

¶13 This case is about Pilot's impermissible weaponization of this process. Rule 15(a) prescribes procedures for the amendment of pleadings before trial. In the context of the tier structure, this makes intuitive sense; if evidence is uncovered during discovery that indicates that the damages in question may be less than or greater than those defined by the initial tier designation, a party may strategically decide that a tier designation amendment is appropriate. This is a tactical decision because the tier structure limits and guides both parties. The tier chosen sets the rules of the

---

[4] Utah Rule of Civil Procedure 26(c)(5) contains this handy chart:

| Tier | Amount of Damages | Total Fact Deposition Hours | Rule 33 Interrogatories including all discrete subparts | Rule 34 Requests for Production | Rule 36 Requests for Admission | Days to Complete Standard Fact Discovery |
|---|---|---|---|---|---|---|
| 1 | $50,000 or less | 3 | 0 | 5 | 5 | 120 |
| 2 | More than $50,000 and less than $300,000 or non-monetary relief | 15 | 10 | 10 | 10 | 180 |
| 3 | $300,000 or more | 30 | 20 | 20 | 20 | 210 |

[5] "A pleading that qualifies for tier 1 or tier 2 discovery constitutes a waiver of any right to recover damages above the tier limits specified in Rule 26(c)(3), unless the pleading is amended under Rule 15." UTAH R. CIV. P. 8(a).

game and puts both parties on notice about what is at stake and therefore how to proceed as adversaries. Such an amendment would not merely alter the amount of damages available, but would also change the core nature of the proceeding and the avenues possible for defense; different tiers bring with them different limitations on deposition hours, interrogatories, requests for production and admission, and days allotted for standard fact discovery. But because Pilot never amended his pleadings before the trial, he cannot make use of rule 15(a).

¶14 Rule 15(b)(1) also cannot apply here because the "issue" of which tier would govern this action was raised in the pleadings. *Pilot v. Hill*, 2018 UT App 105, ¶ 12, 427 P.3d 508. Rule 15(b)(1) states:

> "When an issue *not raised in the pleadings* is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and *to raise an unpleaded issue*."

UTAH R. CIV. P. 15(b)(1) (emphases added).

¶15 But the tier designation was not an unpleaded issue. For the purposes of rule 15(b)(1)'s language regarding issues not raised in the pleadings, the tier structure operates as an umbrella issue that governs the amount of damages and discovery. As the court of appeals correctly noted, the pleading of one tier—as is required by rule 26—includes within it an express disclaimer of the two unchosen tiers. By pleading to proceed under Tier 2, Pilot was therefore necessarily pleading that he was not proceeding under Tier 1 or Tier 3.[6] The tier designation is itself an issue, and that issue was already pled, consented to, and handled at trial to the express exclusion of the other unpleaded tiers.[7]

---

[6] Because of this structure it is impossible to plead tiers in the alternative. This same logic does not apply to inconsistent causes of action. *See Helf v. Chevron USA, Inc.*, 2015 UT 81, ¶ 74, 361 P.3d 63 ("Utah's modern pleading rules permit litigants to plead inconsistent theories of recovery in the alternative."). Consequently, and by way of example, in pleading a claim for strict liability, a party is not precluded from pleading a claim sounding in negligence.

[7] Pilot attempts to separate each tier into its own issue. In Pilot's view, to plead Tier 2 says nothing with respect to Tier 1 and Tier 3. This fundamentally misunderstands rule 26. If in the course of

(continued . . .)

¶16 In sum, Pilot cannot amend his complaint to a Tier 3 pleading under any subsection of rule 15.[8] Rule 15(a) only applies in the pre-trial context, and the tier designation cannot be modified once trial begins, ruling out an amendment under rule 15(b).[9] For this reason, we affirm the court of appeals.

---

evidence production and discovery plaintiffs realize that their claim is worth more or less than the tier they initially pled, rule 8(a) permits them to amend their pleadings to reflect the appropriate tier. The choice of which tier is appropriate may be modified before trial under rule 15—rule 15(a) to be precise. But once the trial begins, the tier issue has been settled. By that point, the parties have already finished conducting discovery and the stage is set for trial. The tier system has done its job. For the purposes of rule 15(b)(1), every tier-related issue has been raised. By selecting a tier the plaintiff has rejected the other two—raising and dismissing them—leaving the matter beyond amendment under rule 15(b)(1). The issue of tier designation may not be modified as if the other tiers had never been addressed.

[8] Although Pilot does not make an explicit appeal to rule 15(b)(2), this part of rule 15 is also of no avail to his case. Rule 15(b)(2) allows that at trial a party may "object[] that evidence is not within the issues raised in the pleadings, [and] the court may permit the pleadings to be amended." Here we assume our deferential posture with regard to the district court's fact-intensive inquiry. We are satisfied that the evidence related to damages presented at trial was relevant to the tier chosen in the pleadings. Pilot's evidence of damages in excess of $300,000 could be used in a Tier 3 case, but this does not mean the evidence was "not within the [Tier 2] issues raised in the pleadings." *See* UTAH R. CIV. P. 15(b)(2). Additionally, neither party objected to the damages introduced at trial as being beyond the scope of the Tier 2 pleadings.

[9] The import of this conclusion is that rule 8's reference to rule 15 only refers to rule 15(a) in the context of implied tier designation modifications. Because a tier designation modification by implied consent is impossible both during and after trial, rule 8's reference to rule 15 is necessarily cabined to rule 15(a) in this context. Moreover, we do not believe this outcome will chill the designation of lower tiers in the pursuit of expedited justice for plaintiffs. The award of damages in excess of those permitted by a specific tier does not necessarily reflect what would have happened had the parties

(continued . . .)

## II. HILL DID NOT CONSENT TO AN UNPLEADED TIER 3 CASE

¶17 It is obvious to us that the best reading of rule 8(a)'s reference to rule 15 is that tier designation issues may only be modified through rule 15(a); once trial has commenced, a rule 15(b) modification is not possible. However, because this case presents an issue of first impression, we also address Pilot's implied consent-based argument. Because the tier designation governs the underlying trial, Pilot's attempt to make an argument grounded in the "express or implied consent" language of rule 15(b)(1) fails. He claims that Hill consented to a Tier 3 designation by not objecting to Pilot's evidence of damages exceeding those allowed in a Tier 2 case. Pilot would have us interpret the decision not to object to any evidence of damages exceeding $300,000 as a defendant's consent to a higher tier. This is wholly unpersuasive.

¶18 Pilot's complaint clearly stated "[t]his is a Tier II case." At no time prior to or during trial did he attempt to amend this complaint. In fact, when the trial court raised the issue at a pre-trial conference, Hill's counsel explicitly stated her belief that any damages awarded above $300,000 would be reduced. And Pilot's counsel not only failed to dispel the notion that damages would be reduced, he seemingly confirmed it, noting, "[y]eah, and then we deal with that after trial."[10] Accordingly, everything that happened after the pre-trial conference would have been viewed by Hill through the lens of a party that thought any damages in excess of $300,000 would be reduced. In other words, at all times during the trial Hill was operating under the assumption that this was a Tier 2 case. Based on these pre-trial discussions, Hill had no reason to believe that any actions taken during trial would imply consent to trying a Tier 3 case.[11]

---

agreed on a higher tier with the accompanying increase in general costs and options for the defense. Counsel's choice of a lower tier and the accompanying limited procedures and time may often be an easily defensible strategic decision. The legitimacy of a lawyer's decision rests on his or her rationale and the client's choices.

[10] In fact, during the hearing on Pilot's motion to amend, his counsel admitted that the decision not to amend the tier pre-trial was "a strategic decision by the lawyers."

[11] The fact that Hill brought a motion for a directed verdict regarding future lost wages does not imply consent to a higher tier.

(continued . . .)

¶19 Pilot asks us to find consent because Hill proceeded to litigate the case even after Pilot submitted damages in excess of $300,000. Pilot's economist submitted a report estimating Pilot's total damages at $950,000–$990,000 and his future wage loss at $625,000–$634,000. Pilot's claim rests on the erroneous belief that this figure, provided by his own expert, constituted sufficient notice to Hill that the stakes exceeded those of a Tier 2 designation, and that Hill's proceeding to litigate the case constituted consent to a modified tier. But this argument proves too much.

¶20 First, because of the pre-trial discussions, Hill had no reason to object to the presentation of excess damages at trial. Hill was merely operating under the assumption that any excess damages awarded would be reduced after trial.

¶21 Second, although the tier structure is guided by damages, limited damages are not the only consequence of a Tier 2 designation. Pilot asks us to infer consent to a higher tier based on the damages estimates of Pilot's own witnesses. This ignores the fact that a tier designation sets other rules, such as how much discovery can be conducted. And even if Hill was not operating under the assumption that damages would be reduced post-trial, neither party violated the mandates of the Tier 2 rules in any way that would imply consent to a different tier. Pilot's own brief illustrates the fact that Hill litigated a Tier 2 case bound by Tier 2 restrictions:

> During discovery, Mr. Hill used less than half the amount of discovery that Tier II afforded him. Mr. Hill could have conducted 15 hours of depositions; instead, he only used a total of 3 hours and 23 minutes. Mr. Hill could have propounded 10 requests for admission; instead, he did not propound any. Mr. Hill did not make any request for additional fact discovery. Mr. Hill hired two experts who both testified that Mr. Pilot did not suffer any lasting injuries and had no wage claim. Mr. Hill's counsel represented to the trial court, she would have no

---

Hill's motion claimed that Pilot had not carried his burden to show that he deserved "the over $600,000 in damages" that his economist reported. Use of this higher figure in this motion pertained to Hill's assertion that Pilot had not upheld his burden of proof, not any desire by Hill to consent to a different tier.

difficultly confronting Mr. Pilot's extensive damage claims.

¶22  Hill's closing argument stated that, by asking for so much in damages, Pilot indicated that he was not credible and that he did not suffer any lasting injury in this case. Hill designated no economist, biomechanical expert, or accident reconstructionist—experts commonly retained in high-value injury cases. Where then is Hill's implied consent to modify the tier designation? It does not exist.

¶23  There is simply no evidence to infer consent in this case. "Implied consent to try an issue 'may be found where one party raises an issue material to the other party's case or where evidence is introduced without objection, *where it appear[s] that the parties understood the evidence [is] to be aimed at the unpleaded issue.'*" *Hill v. Estate of Allred*, 2009 UT 28, ¶ 48, 216 P.3d 929 (alterations in original) (emphasis added) (citation omitted). A plaintiff's expert witness testifying to high damages is not the introduction of new evidence. And it does not introduce a new issue.[12] Hill's behavior with regard to the myriad other limitations of Tier 2 make this clear. Hill did not respond to Pilot's expert witness testimony in a way commensurate with any understanding of a tier designation modification. He did not exceed his allowed discovery, depositions, interrogatories, admissions, or increase his cost outlays. He contested the claim for damages through cross-examination and closing statements. All evidence indicates that the Tier 2 structure was preserved and adhered to by both parties.

¶24  Additionally, Rule 26 provides a method by which both parties could expressly consent to discovery procedures over and above those prescribed by the tier system. Rule 26(c)(6) states:

"To obtain discovery beyond the limits established in paragraph (c)(5), a party shall file:

(c)(6)(A) . . . a stipulated statement that extraordinary discovery is necessary and proportional under paragraph (b)(2) and that each party has reviewed and approved a discovery budget; or

---

[12] It is not atypical for a plaintiff to overstate the damages they seek out of an expectation that the jury will try to split the baby and award the plaintiff damages that fall somewhere between the parties' estimates. Evidence of damages above those allowed by a tier designation does not indicate an abandonment of the tier structure. It is merely trial strategy.

> (c)(6)(B) before the close of standard discovery and after reaching the limits of standard discovery imposed by these rules, a request for extraordinary discovery under Rule 37(a).

UTAH R. CIV. P. 26(c)(6). Obviously, Pilot does not make the claim that any such stipulations or requests were made here. There was no modification of the pled tier made through either implied or express consent of the parties.

## CONCLUSION

¶25  The tier structure established by Rule 26 of the Utah Rules of Civil Procedure exists so that parties may understand the stakes underlying a civil litigation and plan their strategies and expenditures accordingly. Pilot pled and litigated a Tier 2 case in which he was awarded damages in excess of what he was permitted to receive in his designated tier structure. In keeping with the rules he chose and consented to by pleading his case as a Tier 2 case, his damages were commensurately reduced after trial. There is no permitted modification of the tier designation once trial commences and no indication that Hill impliedly consented to litigating a higher tier case even if he could. He could not. He did not. We affirm the court of appeals.