2021 UT App 18

## THE UTAH COURT OF APPEALS

WIN-WIN INVESTMENTS LLC,
Appellant,
*v.*
BERNHARD DUTSON AND AZORA DUTSON,
Appellees.

Opinion
No. 20190332-CA
Filed February 19, 2021

Third District Court, Salt Lake Department
The Honorable Andrew H. Stone
No. 170903317

T. Jake Hinkins , Kurt W. Laird, and Renee L.H.
Blocher, Attorneys for Appellant

Daniel L. Day, Attorney for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and JILL M. POHLMAN
concurred.

HAGEN, Judge:

¶1     This landlord-tenant case began as an action by the lessee, Win-Win Investments LLC, against the lessors, Bernhard and Azora Dutson, alleging that the Dutsons improperly terminated the lease and failed to recognize Win-Win's option to purchase the property. The Dutsons brought a counterclaim, alleging that Win-Win had breached the lease agreement by failing to maintain the premises. After the district court dismissed Win-Win's claims at trial, Win-Win attempted to defend against the Dutsons' counterclaim for damages by asserting that it had assigned the lease to a third party. The district court ruled that the assignment defense had not been adequately pleaded and denied Win-Win's request to amend its pleadings to conform to

the evidence. Win-Win appeals that ruling as well as the final judgment awarding damages on the Dutsons' breach of contract counterclaim. We conclude that the district court correctly ruled that Win-Win's affirmative defense had not been pleaded. Moreover, we conclude that the court appropriately denied Win-Win's motion to amend its pleadings after finding that the assignment issue had not been tried by implied consent. Finally, we conclude sufficient evidence supports the court's damages award. Accordingly, we affirm.

BACKGROUND

¶2     The Dutsons owned a house in Riverton, Utah (the Property) that they agreed to lease to Win-Win. In February 2015, the parties entered into a written lease agreement (the Lease) with an option for Win-Win to purchase the Property for $350,000. Joseph White owned both Win-Win and its sister company, Foundation for Family Life of Utah (the Foundation). Win-Win subleased the Property to the Foundation.

¶3     In exchange for the purchase option, Win-Win agreed, upon execution of the Lease, to place $1,000 in escrow as earnest money to be credited against the purchase price. The Lease provided that Win-Win could exercise the option "at any time during the lease period upon notice to the Lessor in writing by certified mail or email." The Lease had an initial term of one year but was renewable annually for four years by written notice. Win-Win never deposited the required $1,000 earnest money into escrow.

¶4     Although Win-Win renewed the Lease in January 2016, it did not renew it at any point thereafter. In April 2017, over a month after the lease term expired, the Dutsons sent a notice to Win-Win inquiring whether Win-Win intended to renew the Lease. After getting no response, the Dutsons sent Win-Win a notice to vacate.

¶5     Win-Win then filed a complaint against the Dutsons alleging several causes of action, all of which related to Win-Win's contention that the Dutsons unilaterally cancelled the Lease and failed "to recognize Win-Win's right to purchase" the Property. The Dutsons counterclaimed, alleging that Win-Win had breached the Lease by failing "to maintain the premises in the same or improved condition, order and repair as the premises were at the commencement of the term of the Lease." They also sought a judgment declaring that "Win-Win never acquired an option to purchase the premises" because it had failed to deposited the $1,000 into escrow and that it "forfeited the right to an additional consecutive term to lease the premises" by failing to renew the lease in 2017.

¶6     The district court held a bench trial. At the close of Win-Win's case-in-chief, the Dutsons moved to dismiss Win-Win's claims. The court granted the Dutsons' motion to dismiss, concluding that "under the Lease, if Win-Win intended to exercise the option, Win-Win was required to do so during the lease period." However, "[b]y no later than March 1, 2017, the Lease had expired because Win-Win failed to give timely notice of renewal for an additional one-year term. At no point prior thereto did Win-Win attempt to exercise the option by tendering payment of the purchase price." Thus, only the Dutsons' counterclaim for breach of contract remained in dispute.

¶7     The Dutsons offered testimony from three witnesses to prove that Win-Win had failed to maintain the Property as required by the Lease. Mr. Dutson testified regarding the condition of the Property both before Win-Win took possession of the Property and after the Lease was terminated. An expert witness testified about his inspection of the Property and the calculated costs of repairing the damage he observed. Finally, the Dutsons' son, who had periodically visited the Property before and during Win-Win's tenancy, testified regarding the condition of the Property. In its defense, Win-Win called Mr. White, its owner, who asserted for the first time that Win-Win had not merely sublet the Property to the Foundation but had

assigned to the Foundation its entire interest in the Lease. The Dutsons did not object to this testimony.

¶8    Relying on Mr. White's testimony, Win-Win argued for the first time in post-trial briefing that it had assigned its entire leasehold interest to the Foundation, and thus could not be held liable for damages done to the Property. The Dutsons objected, arguing that Win-Win had not pleaded an assignment defense and that the Dutsons had not consented to try it. In response, Win-Win maintained that it had pleaded assignment in its answer to the counterclaim when it stated:

> Defendant's claims are barred by the doctrines of laches, waiver, estoppel, unclean hands and any other defense available under Utah Rule of Civil Procedure 8(c), including, but not limited to, accord and satisfaction, failure of consideration, fraud, illegality, laches, *release* and statute of limitations.

(Emphasis added.) Win-Win asserted that the term "release" encompassed its claim of assignment. In the alternative, Win-Win argued that it had presented evidence on assignment during the bench trial, and therefore moved to amend the pleadings to conform to the evidence pursuant to rule 15(b) of the Utah Rules of Civil Procedure.

¶9    The court ruled that Win-Win had not pleaded assignment as an affirmative defense in its answer to the Dutsons' breach of contract claim. Specifically, the court noted that pleading "release" as a defense was not specific enough to give the Dutsons notice as to Win-Win's assignment theory. Further, the court denied Win-Win's request to amend the pleadings, finding that it would be "clearly prejudicial" and "plainly unfair" to the Dutsons to allow an amendment because they had no notice of the assignment theory.

¶10   The court awarded the Dutsons $146,065.05, the total amount of damages calculated by their expert. It noted that, pursuant to the Lease, "Win-Win accepted the premises in good condition and agreed to repair existing damages." As a result, Win-Win was "obligated to repair or be liable for all damage to the Property beyond reasonable wear and tear." The court viewed hundreds of photographs of the Property and found that the damage depicted went "well beyond reasonable wear and tear." It concluded that the Dutsons had presented "credible and exhaustive testimony of damages" amounting to $146,065.05. The court also awarded attorney fees pursuant to the Lease's attorney fee provision and entered a final order and judgment.

ISSUES AND STANDARDS OF REVIEW

¶11   Win-Win now appeals, challenging the district court's rulings on the Dutsons' counterclaim.[1] First, it argues that it adequately pleaded assignment as an affirmative defense under Utah Rule of Civil Procedure 8(c). "We review the [district] court's findings of fact for clear error and its conclusions of law for correctness." *Hart v. Salt Lake County Comm'n*, 945 P.2d 125, 132 (Utah Ct. App. 1997). "We review the district court's interpretation and application of the rules of civil procedure for correctness and will reverse only if the appellant shows error that was substantial and prejudicial." *Conner v. Department of Com.*, 2019 UT App 91, ¶ 15, 443 P.3d 1250 (cleaned up).

¶12   In the alternative, Win-Win contends that the district court erred in denying its request to amend its pleadings to

---

1. In briefing, Win-Win also challenged the district court's dismissal of its claims. However, at oral argument, Win-Win acknowledged that its claims were inconsistent with its contention that the Lease had been assigned to the Foundation, and it abandoned any challenge to the district court's dismissal of its claims.

conform to the evidence. We review the district court's interpretation of rule 15(b) of the Utah Rules of Civil Procedure for correctness, but because its "determination of whether the issues were tried with all parties' implied consent is highly fact intensive, we grant the [district] court a fairly broad measure of discretion in making that determination under a given set of facts." *Pilot v. Hill*, 2019 UT 10, ¶ 9, 437 P.3d 362 (cleaned up). In other words, whether the Dutsons impliedly consented to trying an unpleaded defense "is a fact-intensive mixed question of law and fact entitling the [district] court's decision to broad deference." *See id.*

¶13 Finally, Win-Win challenges the district court's award of damages. Win-Win argues that the evidence presented at trial was insufficient to support the award of $146,065.05. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the [district] court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Koehler v. Allen*, 2020 UT App 73, ¶ 13, 466 P.3d 738 (cleaned up).

ANALYSIS

I. Assignment

¶14 Win-Win contends that the district court should have reached the merits of its defense that it assigned the Lease to the Foundation and thus was not liable for any damages to the Property. Win-Win argues that the court should have reached this issue either because it was adequately pleaded in its answer or because it was tried by implied consent. We analyze each argument in turn.

A. Adequacy of Pleading

¶15 Win-Win argues that the district court erred when it ruled that Win-Win had not pleaded assignment as an affirmative

defense to the Dutsons' breach of contract claim. Rule 8(c) of the Utah Rules of Civil Procedure provides that a party "shall set forth affirmatively in a responsive pleading . . . any other matter constituting an avoidance or affirmative defense." "Normally, a party waives all defenses not raised in a responsive pleading, such as an answer or reply." *Mack v. Utah State Dep't of Com.*, 2009 UT 47, ¶ 14, 221 P.3d 194; *see also* Utah R. Civ. P. 12(h) ("A party waives all defenses and objections not presented either by motion or by answer or reply . . . .").

¶16    Here, the court determined that although Win-Win asserted a "grab-bag defense in its answer to the counterclaim that suggest[ed] 'release' as a defense," the language was "simply not enough to give notice of Win-Win's theory." We agree. Utah's liberal pleading requirements "require that pleadings 'be construed to do substantial justice.'" *Conner v. Department of Com.*, 2019 UT App 91, ¶ 37, 443 P.3d 1250 (quoting Utah R. Civ. P. 8(f)). A pleading must at least give fair notice to the opposing party as to the nature of the claim or defense. *See Fishbaugh v. Utah Power & Light*, 969 P.2d 403, 406 (Utah 1998). Win-Win never used the term "assignment," nor did it use any other similar language to put the Dutsons on notice of Win-Win's theory that the Lease had been assigned to the Foundation. Therefore, the district court correctly concluded that Win-Win had not pleaded assignment in its answer.

B.    Implied Consent

¶17    Win-Win argues that even if its defense of assignment was not adequately pleaded in its answer, the issue was tried by implied consent, and the court should have allowed Win-Win to amend its pleadings. Rule 15(b) of the Utah Rules of Civil Procedure "specifically governs amendments to pleadings during and after trial." *Pilot v. Hill*, 2018 UT App 105, ¶ 9, 427 P.3d 508, *aff'd*, 2019 UT 10, 437 P.3d 362. "Rule 15(b) has two parts, one mandatory and one discretionary." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 47, 216 P.3d 929. On appeal, Win-Win argues that the mandatory provision of rule 15(b)(1) applies and

that the district court had no discretion to deny its motion to amend.

¶18 Under rule 15(b)(1), "if an issue is fully tried and the opposing party had a fair opportunity to defend," the district court must "decide the issue and deem the pleadings amended even if the issue was not originally pleaded." *Berg v. Berg*, 2012 UT App 142, ¶ 4, 278 P.3d 1071 (cleaned up). The relevant portion of the rule reads as follows:

> When an issue not raised in the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.

Utah R. Civ. P. 15(b)(1).

¶19 Win-Win argues that its assignment defense was tried by implied consent when the Dutsons did not contemporaneously object to Mr. White's testimony that Win-Win had assigned the Lease to the Foundation. As a result, Win-Win argues, relief was mandatory and the district court had no discretion to deny its motion to amend the pleadings under rule 15(b)(1).

¶20 Although an unpleaded issue "must" be treated as if raised in the pleadings if the issue was tried by consent, the determination of whether the issue was tried by consent "is highly fact intensive" and the district court has a "fairly broad measure of discretion in making that determination." *Pilot v. Hill*, 2019 UT 10, ¶ 9, 437 P.3d 362 (cleaned up). In determining whether an unpleaded issue has been tried by implied consent, the court must consider whether the opposing party had "adequate notice" of the issue "and an opportunity to meet it." *Colman v. Colman*, 743 P.2d 782, 785 (Utah Ct. App. 1987); *see also Estate of Allred*, 2009 UT 28, ¶ 48 (explaining that "the test for

determining whether pleadings should be deemed amended under Utah R. Civ. P. 15(b) is whether the opposing party had a fair opportunity to defend and whether it could offer additional evidence if the case were retried on a different theory" (cleaned up). "Implied consent to try an issue may be found where one party raises an issue material to the other party's case or where evidence is introduced without objection, and where it appears that the parties understood the evidence . . . to be aimed at the unpleaded issue." *Berg*, 2012 UT App 142, ¶ 5 (cleaned up).

¶21   Here, the district court did not err in determining that the issue had not been tried by implied consent where the Dutsons did not have notice or opportunity to meet the assignment defense. First, the Dutsons lacked notice. As the court noted, the assignment theory was "not mentioned in the initial disclosures" and was "clearly inconsistent with the initial disclosures offered." It did not "appear in the statement of the case" or the "answer to the counterclaim" and Win-Win's deposition testimony was "fundamentally inconsistent with the theory that an assignment was accomplished." Further, Win-Win's trial brief "clearly continue[d] to assert rights under the lease, fundamentally inconsistent with" the assignment theory.

¶22   Moreover, the Dutsons did not have a fair opportunity to defend against this theory. This is not a case where the Dutsons "actively defended against" the unpleaded issue "despite any vagueness in the pleadings." *Cf. Guss v. Cheryl, Inc.*, 2010 UT App 249, ¶¶ 14–18, 240 P.3d 1142 (affirming the district court's finding of implied consent where the opposing party "actively participated in a trial that focused in a significant way on" an unpleaded issue). To the contrary, the Dutsons had no notice of the assignment theory until after they had concluded their case-in-chief on the counterclaim. Win-Win's position throughout the trial was that a lease existed between itself and the Dutsons, and it continually asserted its rights arising out of the Lease. It was not until the final minutes of the trial, after the court had denied Win-Win's motion for a directed verdict, that Win-Win called Mr. White to testify that Win-Win had assigned the Lease to the

Foundation. Whether the Dutsons would have understood that this unexpected testimony was "aimed at the unpleaded issue" of assignment is a highly fact-intensive question. *See Berg*, 2012 UT App 142, ¶ 5. Under this set of facts, the district court reasonably concluded that the Dutsons' failure to contemporaneously object did not amount to implied consent to try the assignment defense. Therefore, the court appropriately denied Win-Win's motion to amend.

## II. Damages

¶23 Win-Win challenges the district court's award of damages on the Dutsons' counterclaim, arguing that there was insufficient evidence to support the court's award.[2] Specifically, it argues that the Dutsons' damages were speculative because Mr. Dutson "could not testify as to when the damages were incurred" and "admitted that he could not recall what damages existed prior to Win-Win signing the lease." Win-Win further argues that neither the expert witness nor the Dutsons' son could testify as to when

---

2. Win-Win also argues that the award was improper because the Dutsons "did not provide an actual computation of damages during fact discovery, but merely stated broad and unsupported amounts" and did not properly supplement their disclosures. Although the court initially capped the Dutsons' damages at $60,000 based on their initial disclosure, it later reversed that ruling. In so doing, the court determined that the initial inaccurate estimate was made in good faith based on the information available to the Dutsons at the time and was harmless where the Dutsons supplemented that disclosure with Mr. Dutson's deposition and expert testimony in time for Win-Win to meet that evidence. *See* Utah R. Civ. P. 26(d)(4). Win-Win has not challenged that ruling. Because that unchallenged ruling permitted the Dutsons to offer evidence of damages in excess of $60,000, we fail to see how the belated disclosure is relevant to Win-Win's sufficiency of the evidence claim.

any of the damage occurred or whether such damage occurred while Win-Win was in possession of the Property.

¶24   We must sustain the district court's judgment "unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *Koehler v. Allen*, 2020 UT App 73, ¶ 13, 466 P.3d 738 (cleaned up). Here, the evidence supports the damages the district court awarded. The court received hundreds of photographs documenting damage to the Property as well as unrebutted expert testimony calculating the cost of repairing or replacing those damaged items. Although the expert inspected the Property in April 2017 and could not speak to when the damage occurred, the Dutsons offered sufficient evidence to support the court's conclusion that Win-Win was responsible for that damage. Both Mr. Dutson and his son testified that the damage to the Property occurred after Win-Win took occupancy. Mr. Dutson, who had owned the Property since 2006, testified that he had visited the Property "three to four times a month" prior to Win-Win's tenancy and was familiar with the condition of the Property. While on the stand, Mr. Dutson viewed photographs of the Property he had taken in 2017 and testified that the damage seen in the photographs did not exist before March 2015, when Win-Win's tenancy began. The Dutsons' son also testified that he had visited the Property both before and after the Lease had been signed and described the condition of the Property during his various visits. He noted that during a visit in 2014, "everything looked fairly normal" to him. But when he visited the Property after the Lease had been signed, he noticed damage to the Property.

¶25   The only evidence of pre-existing damage to the Property was limited to items that Win-Win was contractually obligated to repair. The Lease specifically noted "the current disrepair of some of the bathrooms, laundry facilities, and a few other areas of the home," and provided that Win-Win "agrees to conduct those repairs and remodeling at [its] expense without credit from" the Dutsons. Although the Dutsons were responsible for

structural repairs exceeding $500 or "for other major repairs (e.g., roof, water heater, etc.)," the Dutsons did not seek damages for repairs of that nature. The Lease also required Win-Win to "examine the [Property] and prepare a list of those items damaged at the commencement of the leasehold period," but Win-Win never did so.[3] This evidence further supports an inference that any pre-existing damage was limited to those items for which Win-Win expressly assumed responsibility.

¶26 The Dutsons proved by a preponderance of the evidence that the claimed damages either occurred after Win-Win took possession of the Property or were pre-existing items that Win-Win agreed to repair at its own expense. Therefore, the court's award of damages was not against the clear weight of the evidence.

### III. Attorney Fees on Appeal

¶27 The Dutsons request an award of the attorney fees incurred in defending this appeal based on the Lease's attorney fees provision. "When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." *Telegraph Tower LLC v. Century Mortg. LLC,*

---

3. Win-Win points out that, under Utah Code section 57-22-4, before entering into the Lease, the Dutsons were required to provide Win-Win a written inventory of the Property's condition, furnish a form for Win-Win to document the condition of the Property, and provide Win-Win with the opportunity to conduct a walkthrough inspection of the Property. Win-Win seems to suggest that the Dutsons' failure to comply with this provision might be "used to mitigate damages claimed by a landlord against a tenant," but does not cite any authority for that proposition or explain how it would be applied in this case. As a result, we do not address this point. *See* Utah R. App. P. 24(a)(8) (explaining that a party "must explain, with reasoned analysis . . . why [it] should prevail on appeal").

2016 UT App 102, ¶ 52, 376 P.3d 333 (cleaned up). Because the district court awarded the Dutsons attorney fees, they are entitled to fees as the prevailing party on appeal.

CONCLUSION

¶28    We conclude that the district court correctly ruled that Win-Win did not plead assignment as an affirmative defense in its answer and that it was not entitled to amend its answer after trial because the assignment issue had not been tried by implied consent. We also conclude that there was sufficient evidence to support the damages the court awarded. We further award the Dutsons the attorney fees they reasonably incurred on appeal. Therefore, we affirm and remand to the district court to calculate the amount of such attorney fees.

————————