2020 UT App 73

# THE UTAH COURT OF APPEALS

ALICIA W. KOEHLER,
Appellee,

*v.*

MARK STEWART ALLEN,
Appellant.

Opinion
No. 20190395-CA
Filed May 7, 2020

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 160400655

Scott N. Weight, Attorney for Appellant

Albert N. Pranno and Justin T. Ashworth, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN M. HARRIS concurred.

HAGEN, Judge:

¶1      The district court found Mark Stewart Allen in contempt
for violating a civil stalking injunction when he contacted Alicia
W. Koehler via email. On appeal, Allen argues that insufficient
evidence supported the district court's findings that (1) he knew
that he was subject to a civil stalking injunction, and (2) he
intentionally violated the civil stalking injunction. Although we
reject his first argument, we reverse on the second and remand
for the district court to enter an explicit finding as to whether
Allen acted intentionally.

BACKGROUND[1]

¶2    Allen and Koehler met in 2011 on Facebook. Whatever relationship developed between the two apparently deteriorated because Koehler requested that Allen "discontinue contact" with her in July 2013. But Allen continued to contact Koehler by emailing her, reaching out through third parties, sending Koehler and her family gifts, and entering Koehler's home while she was not there. After contacting the police in 2014 and 2015, Koehler sought a civil stalking injunction in April 2016.

¶3    The district court granted Koehler a temporary civil stalking injunction (the injunction) on May 2, 2016. The injunction prohibited Allen from contacting Koehler and specifically advised him not to "contact, phone, mail, e-mail, or communicate in any way with [Koehler] . . . either directly or indirectly." In bolded italics, the order stated that "[t]his order ends 3 years after it is served." In a section titled "Warnings to the Respondent," the injunction stated "[t]his is an official court order" and "[n]o one except the court can change it." The injunction further warned that if Allen "disobey[ed] this order, the court [could] find [him] in contempt." The injunction notified Allen of his right to a hearing but warned that if he did not ask for a hearing within 10 days, the order would last for three years after the date of service.

¶4    Allen was served with the injunction on May 13, 2016. Because a hearing was not requested within ten days, "the ex

---

1. "On appeal from a bench trial, we view the evidence in a light most favorable to the district court's findings, and therefore recite the facts consistent with that standard and present conflicting evidence to the extent necessary to clarify the issues raised on appeal." *Burggraaf v. Burggraaf*, 2019 UT App 195, n.2, 455 P.3d 1071 (cleaned up).

parte civil stalking injunction automatically [became] a civil stalking injunction without further notice to [Allen] and expire[d] three years from the date of service." *See* Utah Code Ann. § 77-3a-101(9) (LexisNexis 2017).

¶5     Allen requested a hearing on May 26, 2016. Because the request was made more than ten days after service of the injunction, the burden shifted to Allen "to show good cause why the civil stalking injunction should be dissolved or modified." *See id.* § 77-3a-101(10). The matter was set for a one-day bench trial, but Allen's attorney moved to continue the hearing for additional discovery. For reasons not clear from the record, no hearing was ever held. No court orders were entered revoking or modifying the injunction.

¶6     On December 21, 2018, less than three years after service of the injunction, Allen contacted Koehler via email at 7:01 p.m. The email stated, in part, "Why you have despised me and ruined my hope for happiness, unknown, but I do desire peace between our hearts . . . if you are willing."

¶7     Koehler moved for an order to show cause why Allen should not be held in contempt for contacting her in contravention of the injunction. At the hearing on the motion, Allen testified that he had been served with the injunction in 2016 but had asked his attorney to request a hearing, believing that the injunction would last only until a hearing was held. According to Allen, his attorney later informed him that the hearing was canceled because the case had been dismissed. Allen testified that, after speaking with his attorney, he believed the injunction was no longer in effect, but he admitted that he had never received any official court documents suggesting that the injunction had been dismissed or modified in any way.

¶8     Allen also admitted that he had been criminally charged with violating the injunction in June 2017 and had pled "no

contest" pursuant to a plea-in-abeyance agreement.[2] During that plea hearing, Allen claimed that he "wasn't aware there . . . was an injunction in place" because his "former counsel . . . had a mental breakdown and failed to provide that documentation to [him]." But he admitted, as the factual basis for the plea, that the State could likely prove that "with the stalking injunction in place [he] sent a package to the protected party which was in violation of that." As a condition of the plea in abeyance, the court ordered Allen not to contact Koehler for one year. Allen testified that he complied with the terms of his plea agreement and the criminal case was dismissed prior to December 2018. Allen acknowledged, however, that the court in the criminal case did not say anything about the injunction. Allen was asked multiple times whether the 2017 criminal proceedings put him on notice that the injunction was still in place, and the district court noted that Allen was "evasive" in his answers.

¶9     Allen also claimed that he did not recall emailing Koehler on December 21, 2018. He testified that, on December 21, he had taken both Unisom, an over-the-counter sleep aid, and trazodone, a medication that had been prescribed to Allen to treat insomnia. Allen testified that he "woke up some 24 hours later" and recalled "[a]bsolutely nothing" from the time period during which the email was sent. Allen's prescribing physician

---

2. In accordance with rule 410(a)(2) of the Utah Rules of Evidence, the district court did not consider Allen's prior "no contest" plea for the purpose of establishing that Allen had previously violated the injunction. However, as permitted by rule 410(b), the parties stipulated to the admission of statements made during the plea hearing. We consider those statements only to the extent that they bear on whether Allen knew that the injunction was in effect on December 21, 2018.

testified that taking trazodone and Unisom together would result in impairment and that it was possible that Allen slept for 24 hours.

¶10    After hearing arguments on the motion, the district court found that Koehler had proved the first two elements necessary for contempt by clear and convincing evidence. Specifically, the court found that, first, Allen "knew what was required" by the injunction and, second, Allen had "the ability to comply" with the injunction. But the third element—intentional failure to comply with the court-ordered injunction—was taken under advisement. In considering whether Allen "acted intentionally in sending the email," the court noted that the email was "sent at 7:00 p.m., . . . which is not a time when typically people are asleep, but it could be that he tried to go to sleep at 1:00 or 2:00 in the afternoon and slept for 24 hours." The court observed "that the content of the email and the way that it was drafted is not a rambling email and it's not one that by its face is gibberish." The court also noted that the email "seems to carry messages, it carries it clearly, it's even punctuated, even with the uses of ellipses in the sentences."

¶11    After taking the issue of intent under advisement, the district court issued a written ruling finding Allen in contempt of the stalking injunction. The court found that the third element was satisfied because "Allen acted intentionally, or . . . he was voluntarily intoxicated when he sent the email in question to Ms. Koehler." In its written ruling, the court found that "[t]he content of the email, the proper spelling, sentence structure, use of punctuation are all indications of a person whose mind is not confused or stuporous. The time the email was sent is not when most people would be taking medicines to help them sleep."

¶12    Allen appeals.

ISSUE AND STANDARD OF REVIEW

¶13 Allen argues that there was insufficient evidence to support the district court's findings on two elements of contempt: first, that he was aware of the injunction and, second, that he intentionally violated the injunction. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if we otherwise reach a definite and firm conviction that a mistake has been made." *In re D.V.*, 2011 UT App 241, ¶ 10, 265 P.3d 803 (cleaned up).

ANALYSIS

¶14 "As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988), *superseded on other grounds by statute as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct. App. 1991). The district court must make "explicit findings, whether written or transcribed, on the three elements of contempt." *State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991). In a civil contempt proceeding such as this one, those elements must be proved by clear and convincing evidence. *Von Hake*, 759 P.2d at 1172.[3]

---

3. In a criminal contempt proceeding, the "elements must be proven beyond a reasonable doubt." *Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988). "The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order." *Id.* at 1168. A criminal contempt order is punitive in nature, whereas a

(continued…)

¶15 Allen challenges the sufficiency of the evidence supporting the district court's findings on the first and third elements. First, he argues that there was insufficient evidence that he "knew he was subject to a stalking injunction on December 21, 2018." Next, he argues that there was insufficient evidence that he "knowingly and intentionally violated the stalking injunction that was issued against him" because he could not form the requisite intent due to voluntary intoxication. We address each challenged element in turn.

---

(…continued)

civil contempt order has a remedial purpose. *Id.* "A remedial purpose is indicated when the contemner is allowed to purge him- or herself of the contempt by complying with the court's orders." *Id.* Thus, "a contempt order is criminal if the fine or sentence imposed is fixed and unconditional, but is civil if the fine or imprisonment is conditional such that the contemner can obtain relief from the contempt order merely by doing some act as ordered by the court." *Id.* at 1168 n.5. Here, the district court's order "impose[d] sanctions on Mr. Allen including a jail term of 10 days and a fine of $300." However, these sanctions were "stayed to allow Mr. Allen an opportunity to purge his contempt." The order allowed Allen to obtain relief from the contempt order merely by "having no further contact directly or indirectly, in person, in writing, by email[,] text, electronic posting to social media or in other manner with Ms. Koehler for a period of two years." Because this order was conditional such that Allen could obtain relief by staying away from Koehler, the contempt order is not criminal but civil. *See id.* As such, the court was required to find the three substantive elements of contempt by clear and convincing evidence.

## I. Knowledge of the Injunction

¶16 Allen argues that there was insufficient evidence that he "knew he was subject to a stalking injunction on December 21, 2018" because of "misleading information he received in 2016 from his attorney and the lack of explanation at the 2017 hearing." We disagree.

¶17 The district court found by clear and convincing evidence that Allen knew he was subject to the injunction when he sent the email to Koehler in December 2018. In so doing, the court implicitly found that Allen's claim of ignorance lacked credibility. "Because the weight to be given to the testimony is within the province of the finder of fact, we will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them." *SA Group Props. Inc. v. Highland Marketplace LC*, 2017 UT App 160, ¶ 24, 424 P.3d 187 (cleaned up). Here, the evidence supports the court's finding that Allen knew he was subject to the injunction when he emailed Koehler in December 2018, despite his professed ignorance.

¶18 Allen admitted that he was served with the injunction, which stated that the court order would end after three years. The injunction was served on May 13, 2016, placing Allen on notice that he was required to obey the court order until May 13, 2019. Even assuming that Allen's attorney later misinformed him that the case had been dismissed, the injunction specified that "[n]o one except the court can change" the order and Allen admitted that he never received any official communication from the court relieving him of the responsibility to comply.

¶19 Most importantly, Allen admitted that he had been charged with violating the injunction in 2017, long after he allegedly received the misinformation from his attorney. The stated factual basis for his plea in abeyance was that "with the

stalking injunction in place the defendant sent a package to the protected party which was in violation of that." And when asked whether the 2017 criminal proceedings had resolved any uncertainty about whether the injunction was still in place, Allen was "evasive," casting further doubt on his credibility.

¶20    The record also undermines Allen's claim that the 2017 criminal proceedings created further confusion about the status of the injunction. He testified that, after the plea hearing in his criminal case, he believed that the only order prohibiting him from contacting Koehler was the one-year order issued by the court, which expired before December 2018. But the record makes clear that the one-year period was not a substitute for or modification of the injunction, but a term of Allen's plea-in-abeyance agreement. And Allen admitted that the court in the criminal case did not say anything about the injunction.

¶21    Viewed in the light most favorable to the district court's ruling, the finding that Allen knew what was required of him by the injunction was not against the clear weight of the evidence. Therefore, we affirm the district court's finding that Allen "knew he was subject to a stalking injunction on December 21, 2018."

## II. Intentional Failure to Comply

¶22    Allen also argues that insufficient evidence supported the district court's finding that he "knowingly and intentionally violated the stalking injunction that was issued against him" because he was voluntarily intoxicated when the alleged violation occurred. Because we conclude that the court did not make an explicit finding on whether Allen's conduct was intentional, we do not reach the issue of whether such a finding would be supported by sufficient evidence.

¶23    The district court did not make an explicit finding that Allen acted intentionally, as required to hold him in contempt.

Rather, the court ruled in the alternative that "Allen acted intentionally, *or* that he was voluntarily intoxicated when he sent the email in question to Ms. Koehler." (Emphasis added.) That alternative ruling fails to account for the potential of voluntary intoxication to negate a person's ability to form the intent required for a finding of contempt. *See State v. Bell*, 2016 UT App 157, ¶ 30, 380 P.3d 11.

¶24    Voluntary intoxication is not a defense "unless the intoxication 'negates the existence of the mental state which is an element of the offense.'" *Id.* (quoting Utah Code Ann. § 76-2-306 (LexisNexis 2017)).[4] For voluntary intoxication to negate the existence of intent required for a finding of contempt, a defendant "must demonstrate that his state of intoxication deprived him of the capacity to form the mental state necessary" for such a finding. *Id.* (cleaned up). "It is not enough to merely present evidence showing that the defendant was intoxicated." *Id.* (cleaned up). "Rather, to establish a viable voluntary intoxication defense, the defendant must point to evidence showing that he was so intoxicated that he was incapable of forming the requisite mental state for the [acts] committed." *Id.* (cleaned up).

¶25    Here, the district court appears to have mistakenly assumed that Allen's alleged voluntary intoxication could not be considered in determining whether Allen acted with the required mental state. Indeed, the court's order stated that "[e]ven if [Allen] was not capable of intentionally sending the email as a result of confusion, stupor or intoxication caused by the medicines, since the medicines were voluntarily combined by [Allen], his intoxication was voluntary and therefore not a

---

4. Although section 76-2-306 applies to criminal prosecutions, neither party has suggested that different principles apply in civil cases such as this one.

defense." That ruling allows for the possibility that Allen did not act intentionally. Although the court's subsidiary findings regarding the timing and content of the email suggest that it did not believe Allen's mind was "confused or stuperous" as a result of the alleged intoxication, the court did not explicitly find that the third element was proved by clear and convincing evidence.

¶26   We therefore remand to the district court to make a finding as to whether Allen intentionally violated the injunction. If the court finds this element satisfied by clear and convincing evidence, it should enter an amended judgment to that effect. If, on the other hand, the court finds that Allen did not act intentionally—as a result of voluntary intoxication or otherwise—it should vacate the contempt order.

CONCLUSION

¶27   The district court's finding that Allen knew he was subject to the injunction was not against the clear weight of the evidence. However, because the district court did not enter an explicit finding as to whether Allen acted intentionally in violating the injunction, we reverse and remand for the district court to make a finding on that element of contempt.

————————