2022 UT App 36

## THE UTAH COURT OF APPEALS

KRISTINA PANKHURST,
Appellee,
*v.*
GRANT PANKHURST,
Appellant.

Opinion
No. 20200772-CA
Filed March 24, 2022

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 184901527

Steven B. Wall, Attorney for Appellant

Justin G. Berube, Attorney for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and RYAN M. HARRIS
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1 Grant Pankhurst appeals the district court's orders regarding child support and alimony. We affirm.

## BACKGROUND

¶2 Grant and Kristina Pankhurst married in 2011, and Kristina filed for divorce in August 2018. Just prior to filing her petition, Kristina was visiting her mother in Alaska with the parties' three children. During the visit, Kristina learned information about Grant that prompted her to file for divorce. Grant, who works in the oil industry, travels extensively for work and was traveling at

the time. Because she needed financial help from her family, Kristina decided to stay in Alaska permanently.

¶3     The parties each filed a motion for temporary orders. A commissioner issued a recommendation for temporary orders granting the parties joint physical custody and requiring Kristina to bring the children back to Utah. Kristina objected to the commissioner's recommendation and asked the district court to stay it. The court granted that request, and Kristina continued to live in Alaska with the children.

¶4     In December 2019, the parties reached a stipulation regarding custody of the children. They agreed that Kristina would have primary physical custody of the children and could remain in Alaska. They also agreed that if the parties lived within thirty minutes of each other or if Grant were to live within thirty minutes of one or more of the children's schools, he could exercise parent-time according to the joint custody schedule outlined in Utah Code section 30-3-35.1. However, until that time, Grant could exercise parent-time up to ten overnights per month at his option. By the time of trial in June 2020, Grant had not relocated and had not exercised any overnight parent-time in 2020.

¶5     The parties were unable to reach an agreement concerning, among other things, child support or alimony, and the court held a trial to decide those issues. In its pre-trial order, the court directed the parties to provide updated financial declarations with supporting documentation, copies of their federal tax returns for the past two years, copies of any W-2s and 1099s for the past two years, and copies of their three most recent pay stubs. Grant filed a financial declaration asserting that his gross monthly income was $4,784.01 and that his monthly expenses (less his temporary child support and alimony obligations) were $5,844.56. However, Grant "failed to provide the vast majority of the required supporting documentation for his Financial Declaration and only filed a single pay stub and one 2019 W2."

¶6 The parties' tax returns for years 2013–2017 had been submitted to the court and showed that Grant earned $9,299.84 per month in 2013, $9,434.21 per month in 2014, $10,604.87 per month in 2015, $8,334.00 per month in 2016, and $8,347.00 per month in 2017. Grant did not provide tax returns for 2018 or 2019. However, he testified that his income had decreased, due to a downturn in the oil industry, in the time since the divorce commenced. He did not provide an explanation for the decline in the industry between August 2018 and early 2020 but did assert that there had been a recent drop in demand for oil in the wake of the COVID-19 pandemic, which began only a few months prior to trial. He asserted that he had taken a 15% pay cut and was forced to take extended time off. He claimed that based on his income in 2020 up to the time of trial, he expected to earn only $4,784 per month. However, he did not provide supporting documentation for any of these claims.

¶7 At trial, a neighbor and friend of the parties testified that Grant had told him if he were to get divorced, "his employer would be . . . willing to and be able to manipulate his pay or pay stubs to show he was making less money than he really was." Additionally, Kristina testified that Grant "always was able to choose his schedule" "depending on how much he wanted to bring in." She also testified that during their marriage, Grant's schedule and income had fluctuated from month to month but that his annual income stayed mostly consistent and he averaged $8,000 to $10,000 per month.

¶8 The court found that if there was any decrease in Grant's income, such a decrease was "temporary." The court also found that "Grant failed to provide the vast majority of the required supporting documentation for his Financial Declaration," only filing "a single pay stub and one 2019 W2." "Grant did not provide any bank statements, credit card statements, copies of bills or obligation[s], or any other record that would substantiate the monthly expenses Grant report[ed] on his Financial

Declaration." "Grant testified that he had access to his 2018 and 2019 Federal tax returns" as well as "all of his pay stubs," but he did not provide them to the court. "Grant did not provide any testimony as to any circumstance that would have reasonably prevented him from accessing and providing the documents . . . ."

¶9 Because it considered Grant's alleged income change to be temporary, the court found that "Grant's income should be imputed at $9,095.47 per month" based on his "historical income" calculated from his 2013–2017 federal tax returns. As to Grant's monthly expenses, it concluded that based on the evidence before it, "Grant has reasonable monthly expenses of $3,505.06, excluding any child support [or alimony] obligation." The court also explained that its "findings . . . regarding Grant's income and monthly expenses" were not only based on the evidence available but were also appropriate as a rule 37(b) sanction "for Grant's failure to provide the required documentation."

¶10 Although the parties' stipulation allowed Grant up to ten overnights with the children per month, the court determined that a sole custody child support worksheet was appropriate for calculating child support "[b]ased on the stipulated parent time schedule and based on Kristina's testimony that Grant has not exercised a single overnight parent time in 2020." The court observed that "Grant did not dispute that he has not taken a single overnight parent time visit with the minor children in 2020." Thus, the court ordered Grant to pay $1,625 per month in child support.

¶11 The court found Kristina's gross monthly income to be $3,040 and that she incurred reasonable monthly expenses of $5,624. The court found that Grant earned a net monthly income of $6,821.25. The court reduced Grant's net income by his $1,625 child support obligation and reduced Kristina's need by the same amount. Subtracting Grant's reasonable monthly expenses of $3,505.06 from his remaining income, the court determined that

Grant had the ability to pay $1,691.19 per month and ordered him to pay Kristina $1,500 per month in alimony. The court did not make explicit findings as to Kristina's net monthly income or her total unmet need.

¶12  Grant now appeals the district court's child support and alimony orders.

ISSUES AND STANDARDS OF REVIEW

¶13  Grant asserts that the district court exceeded its discretion by (1) imputing income to him based on his historical income rather than using his current reduced income; (2) ordering him to pay alimony in excess of Kristina's need; and (3) using a sole custody worksheet to calculate child support.[1] "We review the district court's decisions regarding child support and alimony under the abuse of discretion standard." *Anderson v. Anderson*, 2018 UT App 19, ¶ 21, 414 P.3d 1069 (quotation simplified). "Courts have broad discretion to select an appropriate method of assessing a spouse's income, including determinations of income imputation." *Bond v. Bond*, 2018 UT App 38, ¶ 6, 420 P.3d 53 (quotation simplified). Appellants bear "a heavy burden, and we can properly find abuse only if no reasonable person would take the view adopted by the trial court." *Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079 (quotation simplified).

---

1. Grant also asserts that he was forced into a disadvantaged custody arrangement by Kristina's move to Alaska. However, all issues relating to custody were resolved by the parties' stipulation. Had Grant wished to adjudicate the objections he now raises on appeal, he should not have agreed to the stipulation, but should have instead taken the relocation and child custody issues to trial. He cannot now rely on the relocation as a basis to challenge the court's custody and child support orders.

ANALYSIS

I. Income

¶14 Grant asserts that the district court erred by imputing income to him based on his historical income, rather than what he claimed were more current income figures, and by doing so without addressing whether he was voluntarily underemployed. According to Grant, district courts do not have the discretion "to disregard current evidence as to change[d] income in the absence of a finding 'that the parent is voluntarily unemployed or underemployed.'" (Quoting *Hall v. Hall*, 858 P.2d 1018, 1024 (Utah Ct. App. 1993) (quotation simplified).) In support of this assertion, Grant relies on holdings from this court that relied on a now-outdated version of the Utah Code. *See Hill v. Hill*, 869 P.2d 963, 965 (Utah Ct. App. 1994); *Hall*, 858 P.2d at 1024. Prior to 2007, the Utah Code required courts to make a finding that a spouse is voluntarily unemployed or underemployed before imputing income. *See Rayner v. Rayner*, 2013 UT App 269, ¶ 10, 316 P.3d 455. However, the current version of the Utah Code requires only that the judge "enter[] findings of fact as to the evidentiary basis for the imputation." Utah Code Ann. § 78B-12-203(8)(a) (LexisNexis 2018); *see also Rayner*, 2013 UT App 269, ¶ 10. Thus, while "voluntary unemployment or underemployment may be relevant when considering whether a party is concealing income or shirking in his or her efforts to earn income, a finding of voluntary unemployment or underemployment is *not* a prerequisite to imputing income." *Reller v. Argenziano*, 2015 UT App 241, ¶ 33, 360 P.3d 768 (emphasis added) (quotation simplified). Rather, "the focus of the imputation analysis is . . . on the detailed findings of fact necessary to support a decision to impute income rather than the ultimate fact or legal conclusion of voluntary unemployment or underemployment." *Id.* (quotation simplified).

¶15 Beyond asserting that the district court was required to make a finding of voluntary underemployment before imputing

income—an assertion based on an erroneous reading of the law—Grant does not raise any adequate challenge to the court's findings supporting its imputation of income. The only finding Grant challenges is the court's finding that his change in income was temporary. But "[a] party challenging a district court's factual findings on appeal bears a heavy burden of persuasion" in demonstrating that the court's findings are "clearly erroneous." *Dahl v. Dahl*, 2015 UT 79, ¶ 149, 459 P.3d 276. And a party "will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal the evidence sufficient to overcome the healthy dose of deference owed to factual findings." *Id.* (quotation simplified). Here, ample evidence supported a finding that the change was temporary, including the neighbor's testimony that Grant had expressed his intent to artificially deflate his earnings and Kristina's testimony that fluctuations in Grant's income had occurred throughout their marriage and that they had historically been temporary. Grant does not address any of this evidence. Moreover, he does not point us to any evidence indicating that the change was permanent.[2] He has therefore failed to carry his burden of persuasion on appeal to show that the court's finding was clearly erroneous.

¶16 In any event, other findings support the court's decision to impute income, which findings Grant has made no attempt to challenge or even identify in his briefing on appeal. The district court found that, in violation of the court's pre-trial disclosure order, Grant failed to provide adequate supporting documentation of his current income. Without that supporting documentation, the court had no way to accurately calculate Grant's income at the time of trial and certainly did not abuse its

---

2. Although Grant repeatedly claimed that the change was permanent, the only reason he cited for the change was the pandemic, which had not even begun until a few months before trial and the effects of which do not seem to have permanently decreased the price of oil.

discretion in taking into account Grant's failure to submit supporting evidence in weighing his testimony at trial. Moreover, Grant does not challenge the court's determination that imputing income to him using his historical income was an appropriate sanction "for Grant's failure to provide the required documentation." *See* Utah R. Civ. P. 37(b). And "we will not reverse a ruling of the district court that rests on independent alternative grounds where the appellant challenges only one of those grounds." *Allen v. Allen*, 2021 UT App 20, ¶ 31, 483 P.3d 730 (quotation simplified).

¶17 In short, Grant has failed to demonstrate that the district court abused its broad discretion in imputing his income.

## II. Alimony

¶18 As to alimony, Grant asserts that the district court exceeded its discretion in awarding Kristina $1,500 per month in alimony because that amount exceeded her monthly need. Grant is correct that "regardless of the payor spouse's ability to pay more, the recipient spouse's demonstrated need must constitute the maximum permissible alimony award." *Roberts v. Roberts*, 2014 UT App 211, ¶ 14, 335 P.3d 378 (quotation simplified). However, Grant miscalculates Kristina's monthly need.

¶19 Grant asserts that Kristina's unmet need is only $959—the amount of her gross income ($3,040) and child support ($1,625) subtracted from her monthly need ($5,624), and that the court could therefore not order alimony in excess of $959. But courts are generally required to take parties' tax obligations into consideration when calculating alimony. *Wadsworth v. Wadsworth*, 2022 UT App 28, ¶ 105. In particular, where the court has used one party's net income to calculate need or ability to pay, it is an abuse of discretion for the court to then rely on the other party's gross income to calculate their need or ability to pay. *See id.*; *see also Vanderzon v. Vanderzon*, 2017 UT App 150, ¶¶ 45, 58, 402 P.3d 219. Here, the court used Grant's net income to calculate his

ability to pay, yet Grant would have had the court use Kristina's gross income to calculate her need.

¶20    Although the court did not make a finding regarding Kristina's net income, it is apparent from its order and the record that it used her net income to assess her need and that her need did not exceed the alimony award. *See Shuman v. Shuman*, 2017 UT App 192, ¶ 6, 406 P.3d 258 ("So long as the steps by which the ultimate conclusion on each factual issue was reached are apparent, a trial court may make findings, credibility determinations, or other assessments without detailing its justification for finding particular evidence more credible or persuasive than other evidence supporting a different outcome." (quotation simplified)). Evidence presented at trial indicated that Kristina's net income was $2,442.64, and that evidence was uncontradicted so far as we are aware. Using that number, Kristina's unmet need is $1,556.36. The court clearly intended to rely on Kristina's net income to assess her need because it relied on Grant's net income to assess his ability to pay. *See Wadsworth*, 2022 UT App 28, ¶ 105. Thus, the district court did not order alimony in excess of Kristina's need, and its $1,500 per month alimony award was not an abuse of discretion.

## III. Child Support

¶21    Finally, Grant takes issue with the district court's decision to calculate child support based on a sole custody worksheet rather than a joint custody worksheet. Grant asserts that the court abused its discretion in calculating child support utilizing a sole custody child support worksheet rather than a joint custody child support worksheet because the parties' custody order awarded him overnights for more than 30% of the year. When parties are awarded joint custody, a court must either "use a joint custody child support worksheet" or "make findings supporting its deviation." *See Spall-Goldsmith v. Goldsmith*, 2012 UT App 302, ¶ 8, 288 P.3d 1105. The Utah Code defines joint physical custody to

mean that "the child stays with each parent overnight for more than 30% of the year, and both parents contribute to the expenses of the child in addition to paying child support." Utah Code Ann. § 78B-12-102(15) (LexisNexis Supp. 2021). Thus, to challenge a court's child support calculation, a party must show that *both* elements of joint physical custody are satisfied. *See Spall-Goldsmith*, 2012 UT App 302, ¶¶ 9–11.

¶22 Grant's entire argument on this point consists of a single paragraph, in which he asserts that "[t]hirty percent of overnights meets the burden for joint physical custody." But Grant does not grapple with the district court's finding that he had not actually exercised *any* overnights in 2020, nor does he separately address the second element—whether he contributes to the expenses of the children in addition to paying child support. While courts have sometimes considered an award of a particular number of overnights to indicate that a parent is contributing to the "overnight expenses" of their children during their parent-time, *see Rehn v. Rehn*, 1999 UT App 41, ¶ 17, 974 P.2d 306, that is not necessarily dispositive of the contribution question, *see Spall-Goldsmith*, 2012 UT App 302, ¶¶ 4–5, 10–11 (upholding the district court's decision to use a sole custody child support worksheet, despite the father having 44% of overnights in the year, where the father was allowed to deduct extracurricular expenses from his child support payments and failed to "advance any argument that he has satisfied the second element of joint physical custody by contributing to [the child's] expenses in addition to paying child support"). Here, we think it notable that Grant's exercise of parent-time is entirely optional and that he showed no inclination, prior to trial, to exercise his option at all, let alone in a manner that would result in him contributing significantly to the children's overnight expenses.

¶23 Rather than awarding Grant a certain amount of parent-time, the parties' stipulation places an upper limit on his monthly parent-time. While Grant has the option to "exercise parent time

*up to* 10 days/nights every month," the schedule for those overnights is not set and exercising them is completely within his discretion. (Emphasis added.) If Grant wants to exercise parent-time, he must give Kristina twenty-one days' written notice or he waives his parent-time. During the approximately five months immediately preceding trial, Grant had not exercised any overnight parent-time with the children. Given that Grant assumed no physical care of the children, there is no basis to presume that he contributed anything significant beyond child support to their expenses during that time or that he was likely to exercise his parent-time in a manner that would lead him to do so in the future. And Grant has pointed us to no evidence suggesting otherwise. In short, Grant "fails to advance any argument that he has satisfied the second element of joint physical custody by contributing to [his children's] expenses in addition to paying child support." *See id.* ¶ 11. Thus, we conclude that the court did not exceed its discretion in using a sole custody child support worksheet to calculate Grant's child support.

## CONCLUSION

¶24 Because Grant has failed to demonstrate that the district court exceeded its discretion in imputing his income, calculating alimony, or calculating child support, we affirm the district court's alimony and child support orders.

––––––––––