**2024 UT App 146**

# THE UTAH COURT OF APPEALS

IN THE MATTER OF THE ESTATE OF
SHEILA ANNE WRIGHT,

AHMAD RAY SHAYESTEH,
Appellant,
*v.*
GABRIELLE D. ANDERSON,
Appellee.

Opinion
Nos. 20220582-CA; 20220883-CA
Filed October 10, 2024

Third District Court, Salt Lake Department
The Honorable Kent R. Holmberg
Nos. 214901690
213900751

Ahmad Ray Shayesteh, Appellant Pro Se

Matthew N. Evans, Jessica A. Ramirez, and Jacob G.
Roberts, Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1 Following the death of Sheila Anne Wright, Ahmad Ray Shayesteh asserted that he and Wright had been in an unsolemnized marriage and that he was therefore entitled to inherit her estate. Wright's sister, Gabrielle D. Anderson, on the other hand, asserted that she was the sole heir to whom Wright had left her estate by virtue of Wright's will and trust. After a bench trial on Shayesteh's Petition to Recognize a Relationship as a Marriage (the Marriage Case), the district court found that Shayesteh and Wright's relationship did not meet the statutory

requirements for an unsolemnized marriage and that the relevant statute—Utah Code section 30-1-4.5[1]—is not unconstitutionally vague. After a bench trial concerning the administration of Wright's estate (the Estate Case), the district court dismissed Shayesteh's claims against the estate for lack of standing, for violation of the statute of frauds, and for insufficient evidence. In separate appeals that we consider together in this opinion, Shayesteh challenges the district court's findings from both trials. For the reasons set forth below, we find no merit in either appeal and affirm the district court's rulings in both cases.

## BACKGROUND

¶2    In July 2011, Wright and her husband created The Gary and Sheila Wright Trust (the Trust), which holds title to their house (the House) and other assets. In 2014, Wright's husband passed away, and the following year, Wright designated Anderson as the personal representative, trustee, and beneficiary of the Trust.

¶3    In May 2018, Wright met Shayesteh. Two months later, he moved in with her. In January 2020, Wright made Shayesteh the sole beneficiary of her individual retirement account, listing his relationship to her as a "significant other."

¶4    In March 2021, Wright passed away. Shortly after her death, Shayesteh filed the Marriage Case, asking the court to establish the date of his marriage to Wright as the day he moved in with her. Meanwhile, in the Estate Case, the court appointed Anderson as the personal representative of Wright's estate. In that capacity, she gave Shayesteh written notice to vacate the House, but he refused.

---

1. Because our Legislature has since amended this statute, we cite the version of the Utah Code in effect at the relevant time.

¶5    The following month, Anderson, as the personal representative of Wright's estate (the Estate), filed an unlawful detainer complaint against Shayesteh to remove him from the House.[2] The district court consolidated the unlawful detainer action with the Marriage Case and ordered Shayesteh to "immediately vacate" the House or post a $10,000 bond if he wished to stay there "on an interim basis until the trial" in the Marriage Case. The following month, Shayesteh filed a change of address with the court.

*The Marriage Case Trial*

¶6    In September 2021, the Marriage Case proceeded to a one-day, remote bench trial. When the first witness had trouble connecting to the virtual trial, the court stated, "I don't have any objection or any problem with [the witness] attending by phone. But if she's central to your case in any way, I have no way to assess—well, I have very little way to assess credibility without seeing her." Shayesteh's counsel responded, "I understand, Your Honor. I'd ask to just kind of do [your] best, and the Court will have to give it the appropriate weight." The court replied, "Okay." Shayesteh and Anderson were each represented by counsel, and neither party lodged any objections to the proceeding.

¶7    Shayesteh called four witnesses in his case—Wright's manicurist (Manicurist), two next-door neighbors, and a friend—and testified on his own behalf. Manicurist testified she knew Wright well, had never met Shayesteh, but understood that they loved each other and were cohabitating. Manicurist was not aware of any marriage ceremony between Wright and Shayesteh and stated that she and Wright were "good enough friends that if [Wright] were getting married or thinking about getting married,

---

2. Shayesteh does not appeal any rulings made in the unlawful detainer action.

she would tell" her. Wright's neighbors testified they had socialized with Wright and Shayesteh several times. They described Shayesteh helping with household tasks, such as grocery shopping and yard maintenance. But they had never heard Wright say she was married to Shayesteh or planned to marry him. Wright's friend testified she had known Wright for twenty years and thought Wright sounded happy about her relationship with Shayesteh, but she had never heard Wright claim to be married to him.

¶8 Shayesteh testified that he and Wright had an "informal marriage ceremony" performed on August 3, 2018, by a murshid—a spiritual guide in Sufism—who came to the House to perform what Shayesteh called a "Sufi bond."[3] When asked why the murshid was not testifying, Shayesteh claimed the murshid was "a very mystic character" who did not "want to be a part of it all." According to Shayesteh, Wright did not tell her friends and family they were married because "she was shy" but she would tell "people [they met] on the road" that he was her husband. On cross-examination, Shayesteh was questioned more specifically about his work history and admitted he had been released from prison in 2014 after serving over nineteen years. Shayesteh claimed he worked as a freelance writer but could only come up with the name of one entity that bought his work. He also conceded that he and Wright never obtained a marriage certificate. Shayesteh presented no receipts or physical evidence of money he claimed to have spent on home repairs or remodeling, and he confirmed that he had no joint bank account or property he jointly owned with Wright.

---

3. Murshids are "respected spiritual guides" in Sufism, an "inward-looking, mystical dimension of Islam." *See Sufi Orders*, Pew Rrch. Ctr., https://www.pewresearch.org/religion/2010/09/15/muslim-networks-and-movements-in-western-europe-sufi-orders/ [https://perma.cc/EDJ6-Z8QR].

¶9 Anderson testified in her case-in-chief and called her son and daughter as witnesses. Anderson stated she was Wright's younger sister and the beneficiary and trustee of the Trust. Anderson testified she had never heard Wright mention getting married to Shayesteh. Anderson first heard of him when Wright described how she had "met a fellow, and he seemed to be hard on his luck," so she decided to "let him into her home to stay." Anderson's son testified he used to speak with his aunt about six to eight times a year, even after Wright had met Shayesteh, but he had never heard her mention being married to, or agreeing to marry, Shayesteh. Finally, Anderson's daughter testified that Wright had regularly sent her holiday cards signed by both Wright and her husband before he passed away and that she has never received a card with Shayesteh's name on it; instead, the cards were more recently signed with just Wright's name.

¶10 After trial, the district court issued a detailed oral ruling that was later memorialized into its written findings and conclusions. After setting forth the requirements of Utah's unsolemnized marriage statute (the Statute), *see* Utah Code § 30-1-4.5, the court ruled that Shayesteh "failed to provide sufficient evidence that he and [Wright] held themselves out as having a uniform general reputation as husband and wife" and that "there was no evidence presented of a written agreement of a marriage." The district court further explained that consent to enter into a marriage-like relationship "may be establish[ed] by evidence of certain circumstances in the parties' relationship such as maintenance of joint bank accounts and credit accounts," "filing of joint tax returns," or "speaking in the presence of third parties as being married." But since Shayesteh presented no evidence of any such means to prove consent, the district court concluded that "there [was] insufficient evidence to establish the parties had a legal and valid marriage under [the Statute]" and dismissed the case with prejudice.

¶11   Immediately after trial, Shayesteh—now representing himself—filed three motions: a motion to disqualify the judge, a motion to vacate Anderson's appointment as the personal representative, and a motion to reconsider. The district court declared all three to be "without merit," and it awarded attorney fees to Anderson because the motions were "filed in bad faith as a tactic being used only for the purpose of harassment or delay."

¶12   Undeterred, Shayesteh filed a motion for a new trial, alleging he was entitled to a new trial because of "extreme technical difficulties" during the trial, because he had "newly discovered material evidence" consisting of Wright's death certificate and a post-trial declaration from Manicurist, and because the district court's findings were based on insufficient evidence. The district court denied the motion, confirming it "was able to hear all parties, witnesses, testimony, and was able to judge their credibility" and noting there were "no objections to proceeding" or any "motion to continue the proceeding" to show concerns about testimony being taken remotely. The district court also concluded that "none of the evidence identified by Shayesteh is new evidence" since it was available to him at the time of trial, and that its findings were "supported by the evidence at trial."

*The Estate Case Trial*

¶13   In June 2022, the district court held a bench trial in the Estate Case to resolve Shayesteh's remaining claims. Shayesteh argued that Anderson had not established she was Wright's sister, claimed that the Estate owed him $18,200 for money he had purportedly loaned Wright, and claimed that he, not the Trust, was the rightful owner of the House.

¶14   In support of his creditor claim, Shayesteh produced a photocopy of an uncashed check for $12,100 that had his name and the amount typed, not handwritten, that was supposedly signed by Wright. Shayesteh claimed Wright gave him the check

for money he had loaned her to invest in a restaurant in Mexico, but he produced no evidence to support this allegation; in fact, no one else had heard Wright discuss this investment, Shayesteh could not produce the original check, and he claimed to not have any bank records showing he loaned Wright money.

¶15 Regarding Shayesteh's claim he owned the House, he produced only his own testimony that Wright "wanted to make a will" to make him a beneficiary of the Estate and orally promised to give him ownership of the House. Anderson, on the other hand, submitted the Trust documents, including a quitclaim deed from 2011, affirming the Trust's ownership of the House.

¶16 After the trial, the district court ruled as follows:

- "Anderson is . . . Wright's sister and her sole living heir."

- "Shayesteh's creditor claim of $18,200 lacks credibility and there is insufficient evidence to support the claim."

- "Shayesteh is not married to . . . Wright, nor is he an heir of [Wright]. He therefore lacks standing to assert a number of the claims, if not all of the claims he has asserted in this case."

- "Even if Shayesteh did have standing to object to [Anderson] being Personal Representative of the Estate of [Wright], his testimony, evidence and argument lack[] credibility."

- "There is insufficient evidence to establish that [Wright] assigned or transferred [the House] to Shayesteh . . . and Utah's Statute of

> Frauds, Utah Code Ann. § 25-5-1, precludes Shayesteh from claiming that he was assigned or transferred [the House] as there is no writing to establish a transfer . . . ."
>
> - "[The Utah Probate Code] also states that a will must be in writing and there is no such written will in favor of [Shayesteh] executed by [Wright] which also precludes Shayesteh's claim that he was transferred [the House] via a will."

The district court dismissed all of Shayesteh's claims with prejudice, noting it had addressed "all of the remaining issues in this case."

ISSUES AND STANDARDS OF REVIEW

¶17 Shayesteh raises several issues on appeal. We first address his challenges to the district court's rulings in the Marriage Case. Shayesteh contends the district court abused its discretion in denying his motion for a new trial based on technical irregularities and newly discovered evidence. "We review a [district] court's ruling on a motion for a new trial under an abuse of discretion standard." *State v. Billingsley*, 2013 UT 17, ¶ 9, 311 P.3d 995. Indeed, "we must give great deference to the [district] court, which is in a much better position than this court to evaluate the parties' conduct, the context in which the [claimed] irregularity occurred, and the [fact-finder]'s reaction." *Bohman Aggregates LLC v. Gilbert*, 2021 UT App 35, ¶ 44, 486 P.3d 77 (cleaned up).

¶18 Next, Shayesteh contends the district court made clearly erroneous findings. "We review challenges to factual findings for clear error, reversing only if the findings are in conflict with the clear weight of the evidence, or if this court has a definite and firm

conviction that a mistake has been made." *Dole v. Dole*, 2018 UT App 195, ¶ 3, 437 P.3d 464 (cleaned up).

¶19 Shayesteh also contends the Statute is unconstitutionally vague. "We review the constitutionality of a statute for correctness, giving no deference to the lower court's interpretation, presuming the statute is constitutional and resolving any reasonable doubts in favor of constitutionality." *In re Childers-Gray*, 2021 UT 13, ¶ 14, 487 P.3d 96 (cleaned up).

¶20 In the Estate Case, Shayesteh first argues that Anderson was not Wright's sister and that Wright's death certificate was "newly discovered evidence" supposedly proving as much. Second, Shayesteh argues the House was not owned by the Trust. Because Shayesteh raised these two issues before the district court as neither spouse nor heir, we must assess whether Shayesteh has standing in this matter. "Standing is generally a mixed question of fact and law because it involves the application of a legal standard to a particularized set of facts." *Hinkle v. Jacobsen*, 2019 UT 72, ¶ 18, 456 P.3d 738 (cleaned up). "We review the factual determinations made by a [district] court with deference" but "afford minimal discretion to the [district] court on a determination of whether a given set of facts fits the legal requirements for standing." *Alpine Homes, Inc. v. City of West Jordan*, 2017 UT 45, ¶ 10, 424 P.3d 95 (cleaned up).

¶21 Shayesteh also contends that Wright orally promised the House to him and that the district court erred by dismissing his claim for violating the statute of frauds. "The applicability of the statute of frauds is a question of law, which we review de novo." *Coleman v. Stuart*, 2019 UT App 165, ¶ 24, 451 P.3d 658 (cleaned up).

¶22 Finally, Shayesteh contends the district court should not have denied his creditor claim against Wright's estate for $18,200 for insufficient evidence. "When reviewing a bench trial for

sufficiency of the evidence, we must sustain the [district] court's judgment unless it is against the clear weight of the evidence," and "we will not second guess a court's decision about evidentiary weight and credibility if there is a reasonable basis in the record to support them." *Koehler v. Allen*, 2020 UT App 73, ¶¶ 13, 17, 466 P.3d 738 (cleaned up).

## ANALYSIS

### I. The Marriage Case

#### A. Motion for a New Trial

¶23 Shayesteh contends he is entitled to a new trial for two reasons: first, some of his witnesses had technical difficulties during the remote trial, which he claims prevented the district court from properly evaluating their testimony, and, second, he argues Wright's death certificate and Manicurist's declaration qualify as newly discovered evidence under rule 59(a)(4) of the Utah Rules of Civil Procedure. We disagree on both fronts.

¶24 Rule 59 of the Utah Rules of Civil Procedure states, in relevant part, that "a new trial may be granted to any party on any issue for any of the following reasons," including, among others, "(1) irregularity in the proceedings of the court . . . by which a party was prevented from having a fair trial," or "(4) newly discovered material evidence that could not, with reasonable diligence, have been discovered and produced at the trial." Utah R. Civ. P. 59(a). Shayesteh fails to demonstrate that either of these reasons applies here.

¶25 First, the court did not abuse its discretion in concluding that the fact that some of the witness testimony during the remote trial was presented through audio only did not amount to the type of "irregularity in the proceedings" that would warrant a new trial. Shayesteh, through his trial counsel, expressly assured the

court he did not have any concerns about Manicurist testifying without video. There is no evidence to indicate the witnesses were not able to fully and completely testify, and the district court confirmed it "was able to hear all parties, witnesses, testimony, and was able to judge their credibility."

¶26   Yet even if Shayesteh had demonstrated there was an irregularity in the proceeding, his claim fails because he does not establish how he was harmed by it. *See Peterson v. Hyundai Motor Co.*, 2021 UT App 128, ¶ 31, 502 P.3d 320 (explaining that "rule 59 is, by its terms, limited by rule 61, the rule discussing harmless error" (cleaned up)); *see also* Utah R. Civ. P. 61 (stating courts "must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). Without articulating a particularized harm, Shayesteh is not entitled to a new trial, and the district court therefore acted well within its discretion in concluding that the audio-testimony issue did not warrant a new trial in this case.

¶27   Second, the district court likewise did not abuse its discretion in concluding that Wright's death certificate and Manicurist's declaration were not "newly discovered material evidence" that Shayesteh could not have "discovered and produced at trial." *See* Utah R. Civ. P. 59(a)(4). Shayesteh does not dispute that Wright's death certificate was produced in Anderson's pretrial disclosures. But he claims that the image of it was "illegible and undecipherable," and he asserts that it was "the deciphering of [Wright's] death certificate," which he chose to do after trial, that constitutes the newly discovered evidence. Shayesteh also claims that a declaration he obtained from Manicurist after trial stating it was Wright's "intention to allocate [the House] to Shayesteh" should be considered newly discovered evidence. Neither of these documents meet the criteria under rule 59(a)(4) because "with reasonable diligence" both could "have been discovered and produced at the trial." *See id.* Therefore, the

district court did not abuse its discretion in denying Shayesteh's motion for a new trial.

B.      Sufficiency of the Findings

¶28     Shayesteh argues the district court made clearly erroneous factual findings after the bench trial in the Marriage Case. At the outset, we note that Shayesteh failed to marshal the evidence to support this challenge. "A party challenging a district court's factual findings on appeal bears a heavy burden of persuasion in demonstrating that the court's findings are clearly erroneous." *Pankhurst v. Pankhurst*, 2022 UT App 36, ¶ 15, 508 P.3d 612 (cleaned up). "And a party will almost certainly fail to carry its burden of persuasion on appeal if it fails to marshal the evidence sufficient to overcome the healthy dose of deference owed to factual findings." *Id.* (cleaned up). In addition, "we review challenges to factual findings for clear error, reversing only if the findings are in conflict with the clear weight of the evidence, or if this court has a definite and firm conviction that a mistake has been made." *Dole v. Dole*, 2018 UT App 195, ¶ 3, 437 P.3d 464 (cleaned up). We have no such conviction here.

¶29     The district court made detailed findings based on the evidence presented at trial and explained where it found credibility lacking or evidence insufficient. The court's finding that Shayesteh "failed to provide sufficient evidence that he and [Wright] held themselves out as having a uniform general reputation as husband and wife" as required by the Statute was supported by the testimony presented that proved "just the opposite." None of the witnesses were under the impression that Wright and Shayesteh were married, nor did they ever hear them refer to each other as husband or wife. The court did not find Shayesteh's testimony that Wright had "told unknown strangers" he was her husband credible when Wright's friends, neighbors, and family who testified said she had never described Shayesteh as her husband. Regarding the required consent to be married, the

court's finding of insufficient evidence that consent had been established was supported by the lack of "joint bank accounts and credit accounts," of "filing of joint tax returns," or of "speaking in the presence of third parties as being married." *Volk v. Vecchi*, 2020 UT App 77, ¶ 27, 467 P.3d 872. "In a bench trial or other proceeding in which the judge serves as fact finder, the court has considerable discretion to assign relative weight to the evidence before it" and "is in the best position to judge the credibility of witnesses and is free to disbelieve their testimony." *SA Group Props. Inc. v. Highland Marketplace LC*, 2017 UT App 160, ¶ 24, 424 P.3d 187 (cleaned up). Shayesteh has failed to carry his burden of persuasion on appeal to show that the district court's findings are clearly erroneous.

C.      Constitutional Challenge to the Statute

¶30     Shayesteh contends the Statute is "unconstitutionally vague" because it leaves open to interpretation key terms such as "marital rights, duties, obligations," and "a uniform and general reputation as husband and wife."

¶31     In relevant part, the Statute states,

> A marriage which is not solemnized according to this chapter shall be legal and valid if a court or administrative order establishes that the marriage arises out of a contract between a man and a woman who . . . mutually assume marital rights, duties, and obligations; and . . . who hold themselves out as and have acquired a uniform and general reputation as husband and wife.

Utah Code § 30-1-4.5(1).

¶32     "When we consider constitutional challenges to a statute, we presume the statute to be constitutional, resolving any reasonable doubts in favor of constitutionality." *Planned*

*Parenthood Ass'n of Utah v. State*, 2024 UT 28, ¶ 216 (cleaned up). "The party attacking the constitutionality of a statute has the burden of affirmatively demonstrating that the statute is unconstitutional." *Salt Lake County v. Utah State Tax Comm'n*, 2024 UT 11, ¶ 27, 548 P.3d 865 (cleaned up). "This is a heavy burden, requiring a party to provide a sufficient basis for such challenge, and not merely a murky basis for setting the statute aside." *Id.* (cleaned up).

¶33     Shayesteh's constitutional challenge here founders in murky waters. He proposes no alternative language or specific examples of discriminatory effect. At most, Shayesteh critiques the Statute as favoring "European/Christian culture" in using the terms "husband" and "wife" rather than "soul mate," which he claims, without evidentiary support, would better correspond with the Sufi faith. But this contention is no more than a bald assertion that fails to analyze how the Statute's language is not "sufficiently definite so as to discourage arbitrary and discriminatory enforcement." *State v. Green*, 2004 UT 76, ¶ 50, 99 P.3d 820.

¶34     Furthermore, Shayesteh has not met his heavy burden of proving vagueness because he is challenging a civil, not criminal, statute, which provides a conditional, not absolute, marriage right. As our supreme court has explained, "vagueness questions are essentially procedural due process issues" and, generally speaking, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* ¶ 43 (cleaned up). But the "constitution tolerates a greater degree of vagueness in civil statutes than in criminal statutes." *Id.* And here, the Statute provides an opportunity for individuals to demonstrate the existence of an unsolemnized marriage by using broader, rather than narrower, terms to describe the relationship. Indeed, were the Statute narrower in its

requirements, it may risk excluding more individuals from the benefit of the Statute. Thus, Shayesteh falls short of clearing the high hurdle inherent in challenging the constitutionality of a civil statute.

## II. The Estate Case

### A.     Standing

¶35     In his claimed capacity as Wright's unsolemnized spouse, Shayesteh challenged Anderson's role as the personal representative of the Estate and the Trust's ownership of the House. In its detailed written findings of fact and conclusions of law issued after the bench trial, the district court concluded, "[Shayesteh] is not married to [Wright], nor is he an heir of [Wright]. He therefore lacks standing to assert a number of the claims . . . he has asserted in this case." We agree.

¶36     "Standing is a jurisdictional requirement that must be satisfied before a court may entertain a controversy between two parties." *Laws v. Grayeyes*, 2021 UT 59, ¶ 27, 498 P.3d 410 (cleaned up). Our supreme court has set forth a three-part test to assess whether a party has traditional standing:

> First, the party must assert that it has been or will be adversely affected by the challenged actions. Second, it must allege a causal relationship between the injury to the party, the challenged actions, and the relief requested. And third, it must request relief that is substantially likely to redress the injury claimed.

*Id.* (cleaned up). Shayesteh cannot meet the first part of this test. "To be adversely affected," a plaintiff "must demonstrate a particularized injury that gives [the plaintiff] a personal stake in the outcome of the dispute." *Id.* ¶ 28 (cleaned up). Shayesteh "falls short of this" because—given that his claims in the Marriage Case

were properly rejected—"he can assert only a general interest he shares in common with members of the public at large." *Id.* (cleaned up). Shayesteh is neither a spouse nor an heir of Wright. Accordingly, he cannot show how he would be any more "adversely affected" than any other member of the public regarding whether Anderson is Wright's sister or whether the House was owned by the Trust. Without a legal relationship to Wright that would entitle him to any of her assets, Shayesteh has no "personal stake in the outcome of the legal dispute" and no more right than a "member[] of the public at large" to assert a claim to her property. *Id.* (cleaned up). Thus, without an injury, we need not reach the remaining parts of the test, and Shayesteh's claims against the Estate regarding Anderson's status and whether the House was owned by the Trust fail for lack of standing.

B. Ownership of the House

¶37 In addition to Shayesteh's claim that he is entitled to inherit the House as Wright's unsolemnized spouse, *see supra* ¶¶ 34–35, Shayesteh also claims that Wright orally promised to leave the House to him and that it was her "will and intention to designate Shayesteh as the sole beneficiary of [the] House." This claim fails because Shayesteh never provided any documentation to support the claim, which is required under Utah law.

¶38 Generally, "statutes of frauds are intended to bar enforcement of certain agreements that the law requires to be memorialized in writing." *Coleman v. Stuart*, 2019 UT App 165, ¶ 29, 451 P.3d 658 (cleaned up). Under Utah's statute of frauds, "any contract conveying an interest in land in which the agreement has not been reduced to writing and signed by the person relinquishing the property is unenforceable." *Id.* (cleaned up); *see also* Utah Code § 25-5-1 ("No estate or interest in real property . . . shall be created, granted, assigned, surrendered or declared [except] by deed or conveyance in writing . . . ."). "The

high evidentiary standard of the statute of frauds" speaks to its "primary purpose," which is "to require reliable evidence of the existence and terms of the contract and to prevent enforcement through fraud or perjury of contracts never in fact made." *WDIS, LLC v. Hi-Country Estates Homeowners Ass'n, Phase II*, 2022 UT 33, ¶ 33, 515 P.3d 432 (cleaned up). Similarly, Utah's probate code requires a will to be "in writing." Utah Code § 75-2-502(1)(a).

¶39 Here, Shayesteh produced "no evidence to contradict the fact that [the Trust] owns the [House]" as established by the quitclaim deed, which Anderson introduced into evidence at trial. Manicurist's belated testimony that Wright intended to change her will and give Shayesteh the House does not suffice. As the district court noted, "It is one thing to simply say that you are going to create a will, and another thing to actually create the will." Shayesteh produced no evidence of a will that transferred the House to him. In sum, Utah's statute of frauds and probate code preclude Shayesteh's claim that he is the rightful owner of the House when he has not produced a single document in support.

C.    Creditor Claim

¶40 Finally, Shayesteh contends the district court erred in denying his creditor claim of $12,100 against the Estate.[4] Regardless of the legal status of his relationship with Wright, Shayesteh claims that Wright owed him money related to a business investment in Mexico. He bases this claim on the uncashed check in that amount "written" out to him and supposedly signed by Wright. Because Shayesteh failed to produce any other document, including the original check, to support this claim, the district court concluded, "Shayesteh's

---

4. Shayesteh originally filed a document entitled "Creditor Claim Against the Estate of Sheila Anne Wright" claiming $18,200, but his briefing on appeal mentions only $12,100.

creditor claim of $18,200 lacks credibility and there is insufficient evidence to support the claim."

¶41    "Factual determinations are accorded a high degree of deference." *In re E.R.*, 2021 UT 36, ¶ 15, 496 P.3d 58. This is so "because a lower court often has a comparative advantage in its firsthand access to factual evidence." *Id.* (cleaned up). Accordingly, "we will not second guess a court's decisions about evidentiary weight and credibility if there is a reasonable basis in the record to support them." *Koehler v. Allen*, 2020 UT App 73, ¶ 17, 466 P.3d 738 (cleaned up); *see also Clarke v. Clarke*, 2023 UT App 160, ¶ 27 n.6, 542 P.3d 935 ("We review [district] courts' credibility determinations with a high level of deference, given their advantaged position in making that assessment.").

¶42    Here, it was more than reasonable for the district court to conclude Shayesteh's self-serving, uncorroborated testimony that Wright owed him $18,200 "lack[ed] credibility." The photocopy Shayesteh presented was of an uncashed check for $12,100 that had his name and the amount *typed*, not handwritten, that was supposedly signed by Wright. Shayesteh could not produce the original check, and he admitted that he did not have any bank records showing that he had loaned Wright money.

¶43    Moreover, Shayesteh's briefing contains no analysis or caselaw to support his claim that the district court erred in its ruling on this issue. Our rules of appellate procedure require parties to "explain, with reasoned analysis by citations to legal authority and the record, why the party should prevail on appeal." Utah R. App. P. 24(a)(8). "A party may not simply point toward a pile of sand and expect the court to build a castle. In both district and appellate courts, the development of an argument is a party's responsibility, not a judicial duty." *Lamb v. Lamb*, 2024 UT App 16, ¶ 17, 545 P.3d 273 (cleaned up). Even as a pro se litigant, Shayesteh had a duty before the district court at trial and

before us in his briefing to provide more than his self-serving testimony to support this claim. Accordingly, the claim fails.

CONCLUSION

¶44    With respect to the Marriage Case, the district court did not abuse its discretion in denying Shayesteh's motion for a new trial and its findings were squarely supported by the evidence and not clearly erroneous. We further conclude Shayesteh failed to meet his burden in challenging the Statute as unconstitutionally vague.

¶45    Regarding the Estate Case, Shayesteh lacks standing— being neither spouse nor heir—to challenge the Estate and Anderson in her role as its personal representative, so the district court correctly dismissed those claims. We also agree with the district court's dismissal of Shayesteh's remaining claims against the Estate on the merits, concluding his ownership claim to the House is precluded by the statute of frauds and the probate code and his creditor claim suffers from insufficient evidence and credibility issues. Accordingly, we affirm the district court's rulings in all respects.

—————